The STATE of Ohio, Appellee,

v.

LETT, Appellant.

[Cite as *State v. Lett*, 161 Ohio App.3d 274, 2005-Ohio-2665.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 84707 and 84729.

Decided May 31, 2005.

276

William D. Mason, Cuyahoga County Prosecuting Attorney, and Edward J. Corrigan, Assistant Prosecuting Attorney, for appellee.

Paul Mancino Jr., for appellant.

MICHAEL J. CORRIGAN, Judge.

{¶ 1} In *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, the United States Supreme Court held that the "statutory maximum" for sentencing purposes is the maximum sentence that a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. Shortly after the Supreme Court released that opinion, Justice Sandra Day O'Connor was widely quoted as saying that the decision "looks like a No. 10 earthquake to me." These remarks proved accurate. The application of *Blakely* to sentencing issues relating to the maximum, minimum, and consecutive sentences under R.C. Chapter 2929 has now divided this court, with the result being the imminent issuance of conflicting opinions from this appellate district.

{¶ 2} Because the Ohio Supreme Court has held that Section 3(B), Article IV of the Ohio Constitution requires that the certification of a conflict can only occur between districts, not within districts, see *Whitelock v. Gilbane Bldg. Co.* (1993), 66 Ohio St.3d 594, 596–597, 613 N.E.2d 1032, we invoked our en banc procedure, extant since 1976, to resolve preemptively the differences within this district. In doing so, we acknowledge that the Ohio Supreme Court has certified several cases touching on the issues to be addressed herein, including one involving

Anthony Lett, appellant herein, in an unrelated case.[1] Nevertheless, we think it provident to resolve the conflicts within this district pro tempore until such time as the Supreme Court resolves these issues definitively.

{¶ 3} As might be expected, the complexity of the issues presented in this case has left this court deeply divided. We recognize that the orderly administration of justice is the rock upon which government rests. More criminal cases are heard in this appellate district than in any other in this state. Our refusal to speak on these issues, no matter how discordantly on an individual basis, would create the untenable situation in which individual defendants would be sentenced differently pending the Ohio Supreme Court's decision. All of us agree that that would be an unacceptable outcome that must be avoided; hence, we have all agreed to apply the law set forth in this opinion until the Ohio Supreme Court renders a final decision.

{¶ 4} The two specific questions before this court en banc are (1) whether the statutory provisions of R.C. 2929.14(C) and 2929.19(B)(2)(d), required for the imposition of maximum sentences, implicate the Sixth Amendment to the United States Constitution as construed by the United States Supreme Court in *Blakely* and *United States v. Booker* (2005), 543 U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621, and (2) whether the statutory provisions of R.C. 2929.14(E)(4) and R.C. 2929.19(B)(2)(c), required for the imposition of consecutive sentences, implicate the Sixth Amendment as construed by the United States Supreme Court in *Blakely* and *Booker*.[2]

{¶ 5} Although Lett raises four assignments of error,[3] the gravamen of his appeal takes issue with the trial court's imposition of maximum and consecutive sentences, which are within the scope of the en banc questions. This opinion consists of five major parts. Part I details the procedural history of the appeals. In part II, we address the relevant Sixth Amendment law. In part III, issues relating to the maximum sentence will be addressed. In part IV, a majority of

---

1. *State v. Lett*, 104 Ohio St.3d 1438, 2004-Ohio-7033, 819 N.E.2d 1122.

2. In conjunction with the release of this opinion, we also release *State v. Atkins–Boozer*, Cuyahoga App. No. 84151, 2005-Ohio-2666, 2005 WL 1274215, in which we address issues relating to the imposition of more than the minimum sentence.

3. For his third assignment of error, Lett argues that he was subjected to multiple punishments and double jeopardy when he was required to serve a prison term after violating his probation for a third time. However, Lett was not subjected to double jeopardy when he was found to be in violation of probation and community-control sanctions and was sentenced to prison based on the fact that he had committed new crimes while under supervision. The record indicates that Lett's sentence was based on his prior criminal history and facts charged in the indictment, to which Lett pleaded guilty. Thus, Lett's third assignment of error is overruled.

this court agrees that *Blakely* does not affect the imposition of consecutive sentences. We conclude in part V.

## I. Procedural History of Appeals

{¶ 6} In case No. CR–447030, Anthony Lett pleaded guilty to a single count of drug trafficking, a fourth-degree felony carrying a possible prison sentence of six to 18 months. It was also agreed that the state would return a 1989 Cadillac that had been seized when Lett was arrested. In case No. CR–445593, Lett pleaded guilty to one count of possession of drugs, a felony of the third degree, punishable by a term of incarceration from one year up to five years. The court sentenced Lett to the maximum of five years' incarceration in case No. CR–445593, and ordered that that sentence be served consecutively to the sentences imposed in case No. CR–447030.[4] In total, Lett was sentenced to six and one-half years in prison. In addition, on a prior date, Lett was found to be a violator of probation and community-control sanctions and was ordered to serve the remainder of his sentence stemming from a previous drug conviction.

{¶ 7} Lett raises four assignments of error that, collectively, argue that the court erred in imposing maximum, consecutive sentences. These arguments are based on *Blakely*, since they claim that the court imposed the sentences by making statutorily mandated factual determinations that were not admitted by Lett at the time of his guilty pleas.

## II. Sixth Amendment Law

{¶ 8} The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, guarantees an accused the right to trial by jury. Likewise, Section 5, Article I of the Ohio Constitution states that the "right of trial by jury shall be inviolate."

{¶ 9} In *Apprendi v. New Jersey* (2000), 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, the court held that a New Jersey hate-crime statute, which doubled Apprendi's maximum sentence based on the sentencing judge's finding by a preponderance of the evidence of biased motive, was unconstitutional because it deprived Apprendi of the right to have a jury determine all essential elements of the offense. The Supreme Court stated that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490, 120 S.Ct. 2348, 147 L.Ed.2d 435.

---

4. The court also ordered that Lett serve his sentences consecutively to a sentence issued in case No. CR–443458. That case, however, was reversed in part on appeal in *State v. Lett,* 160 Ohio App.3d 46, 2005-Ohio-1308, 825 N.E.2d 1158. That reversal does not affect the consecutive sentences ordered in case Nos. CR–445593 and CR–447030.

{¶ 10} After *Apprendi*, prosecutors in grid or guideline sentencing jurisdictions believed that the "maximum" penalty was that set forth by law and which included all possible upward departures authorized by statute. For example, like the federal courts, the state of Washington employed a grid system to determine the appropriate sentencing range for an offender. Sentences were determined by looking at two key factors on a grid: the offender's criminal history and the level of the crime. The intersection of those lines did not necessarily occur at the maximum level allowed by law, and various upward departures existed which might increase the sentence.

{¶ 11} *Blakely* involved the constitutionality of a prison sentence that was imposed under Washington's grid-style sentencing scheme. Blakely pleaded guilty to a second-degree kidnapping charge involving domestic violence and also to the use of a firearm, a second-degree class-B felony carrying a maximum punishment of ten years' imprisonment (120 months). Under Washington's sentencing statute, the "standard range" of incarceration for second-degree kidnapping with a firearm is 49 to 53 months. The sentencing statute permits a trial judge to impose a sentence above the standard range if the judge finds substantial and compelling reasons justifying an "exceptional sentence." One of the aggravating factors justifying the imposition of an exceptional sentence is whether the offender acted with "deliberate cruelty." After conducting a full evidentiary hearing, the trial judge found by a preponderance of the evidence that Blakely had acted with deliberate cruelty in carrying out the kidnapping and imposed a prison sentence of 90 months.

{¶ 12} The Supreme Court reversed the trial court's imposition of the exceptional sentence, holding that " '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " *Blakely*, 542 U.S. at ——, 124 S.Ct. at 2536, 159 L.Ed.2d 403, quoting *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348, 147 L.Ed.2d 435. The Supreme Court further held that the "statutory maximum" for purposes of *Blakely* and *Apprendi* is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts but the maximum the judge may impose without any additional findings. *Blakely*, 542 U.S. at ——, 124 S.Ct. at 2537, 159 L.Ed.2d 403. Thus, the maximum sentence the trial judge was permitted to impose for second-degree kidnapping with the use of a firearm was 53 months—the upper end of the stated guidelines—without enhancement. Because the trial judge erroneously imposed a 90–month term based on facts not admitted to at the time of the guilty plea, the Supreme Court concluded that Washington's sentencing procedure violated

Blakely's Sixth Amendment right to a trial by jury and declared his prison sentence invalid.

{¶ 13} *Blakely* caused a furor within the legal community, yet the Supreme Court reaffirmed it in *Booker,* excising both Section 3553(b)(1), Title 18, U.S.Code ("the provision that requires sentencing courts to impose a sentence within the applicable Guidelines range (in the absence of circumstances that justify a departure)"), and Section 3742(e), Title 18, U.S.Code ("the provision that sets forth standards of review on appeal, including de novo review of departures from the applicable Guidelines range"). *Booker,* 543 U.S. at ——, 125 S.Ct. at 764, 160 L.Ed.2d 621. The *Booker* court held that Section 3553(b)(1) was incompatible with its prior holdings that the Sixth Amendment requires juries, not judges, to make findings of fact relevant to sentencing. If a state makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact— no matter how the state labels it—must be found by a jury beyond a reasonable doubt. As a result, the Supreme Court rendered the federal sentencing guidelines advisory, instructing the federal courts to consider the guideline ranges and review the sentencing decisions for reasonableness.

{¶ 14} By making the guidelines discretionary rather than mandatory, the Supreme Court was able to reaffirm its adherence to long-standing precedent that discretion in sentencing does not implicate the Sixth Amendment. *Booker,* 543 U.S. at ——, 125 S.Ct. at 750, 160 L.Ed.2d 621. The Supreme Court said that it never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. Id., citing *Apprendi,* 530 U.S. at 481, 120 S.Ct. 2348, 147 L.Ed.2d 435; *Williams v. New York* (1949), 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337. Moreover, the Supreme Court noted that all parties in *Booker* agreed that the Sixth Amendment issues presented in *Apprendi* and *Blakely* would have been entirely avoided if the provisions that make the guidelines mandatory and binding on all district judges had been omitted. *Booker,* 543 U.S. at ——, 125 S.Ct. at 750, 160 L.Ed.2d 621.

{¶ 15} Thus, as the law currently stands, sentencing schemes that grant a judge discretion to impose a sentence (as opposed to grid systems, which very narrowly limit a judge's choices) are permissible under the Sixth Amendment.

### III. Maximum Sentences

{¶ 16} R.C. 2929.14(C) states:

{¶ 17} "Except as provided in division (G) of this section or in Chapter 2925. of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future

crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."

{¶ 18} When imposing a maximum sentence, the court must not only make the specific finding that an offender committed the worst form of the offense or would pose the greatest likelihood of committing future crime, but must state the reasons why it makes that particular finding. See R.C. 2929.19(B)(2)(d).

{¶ 19} We agree with the nearly unanimous view of the other appellate districts in this state[5] that the findings a court must make before imposing a maximum sentence do not implicate an offender's Sixth Amendment right to have issues relating to the elements of an offense either admitted to by a plea or determined by a trier of fact. Ohio has a hybrid sentencing scheme that imposes determinate sentences from an indeterminate range of possible terms. At all events, the defendant knows from the point of indictment what the possible maximum term of incarceration will be for a particular charged offense.

{¶ 20} For example, in case No. CR–445593, Lett pleaded guilty to one count of possession of drugs, a felony of the third degree. A third-degree felony is punishable by a term of incarceration of one, two, three, four, or five years. The findings required under R.C. 2929.14(C) do nothing to change the maximum sentence that could be imposed—in any event, Lett could never be sentenced to more than five years for a third-degree felony.

{¶ 21} We believe that those who conclude that the findings required under R.C. 2929.14(C) constitute additional facts that implicate *Blakely* reach that conclusion from a faulty premise—they equate Ohio's sentencing scheme with the grid systems considered in both *Blakely* and *Booker*. Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136 ("S.B. 2") stands in stark contrast to the schemes invalidated in *Blakely* and *Booker*. In both of those cases the sentencing judges made factual determinations beyond those found by the jury. In each case, the facts found by the respective courts could easily have been charged as elements

---

5. Ten of the 12 Ohio appellate districts have held that Ohio's sentencing scheme does not implicate *Blakely*. See *State v. Sour*, 2d Dist. No. 19913, 2004-Ohio-4048, 2004 WL 1728579, ¶ 7; *State v. Scarberry*, 3d Dist. No. 8–04–32, 2005-Ohio-1425, 2005 WL 696829, ¶ 10, citing *State v. Trubee*, 3d Dist. No. 9–03–65, 2005-Ohio-552, 2005 WL 335833, ¶ 23; *State v. Ward*, 4th Dist. No. 04CA25, 2005-Ohio-1580, 2005 WL 737578, ¶ 14; *State v. Rorie*, 5th Dist. No. 2002CA00187, 2005-Ohio-1726, 2005 WL 845230, ¶ 69, quoting *State v. Iddings*, 5th Dist. No. 2004CAA06043, 2004-Ohio-7312, ¶ 12; *State v. Adams*, 6th Dist. No. S–04–017, 2005-Ohio-1548, 2005 WL 736672, ¶ 6, quoting *State v. Curlis*, 6th Dist. No. WD–04–032, 2005-Ohio-1217, 2005 WL 635025, ¶ 18; *State v. Goins*, 7th Dist. No. 02 CA 68, 2005-Ohio-1439, 2005 WL 704865, ¶ 111; *State v. Burns*, 9th Dist. No. 22198, 2005-Ohio-1459, 2005 WL 711927, ¶ 4–5; *State v. Sieng*, 10th Dist. No. 04AP–556, 2005-Ohio-1003, 2005 WL 555664, ¶ 37; *State v. Rupert*, 11th Dist. No. 2003–L–154, 2005-Ohio-1098, 2005 WL 583796, ¶ 48; *State v. Gann*, 12th Dist. No. CA2004–01–028, 2005-Ohio-678, 2005 WL 406214, ¶ 16.

of the offense because they were objective findings and thus readily amenable to disposition at trial. For example, in *Booker* the defendant pleaded guilty to possessing 50 grams of crack cocaine, but the sentencing judge found that Booker actually possessed 92.5 grams and sentenced him on that basis. Likewise, in *Blakely,* the sentencing judge went beyond the facts determined by the jury and found by a preponderance of the evidence that *Blakely* had committed his offense with "deliberate cruelty."

{¶ 22} Conversely, a finding that an offender committed the worst form of the offense or posed the greatest likelihood of committing future crimes is purely subjective in nature and not amenable to disposition based solely on facts found by the trier of fact or admitted in a plea. Indeed, if a defendant pleads guilty or exercises his Fifth Amendment right not to testify, it would be impossible for the trier of fact to determine the possibility of recidivism because no facts about the defendant would be forthcoming.

{¶ 23} The subjective nature of the determinations made under R.C. 2929.14(C) is fully consistent with *Blakely*'s intent to preserve the discretion that judges have long enjoyed for sentencing purposes. To give effect to the Supreme Court's recognition that "indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion," the sentencing factors traditionally employed by judges must be considered as matters going to the judge's discretion in sentencing, not as mandatory fact-finding. *Blakely,* 542 U.S. at ——, 124 S.Ct. at 2540, 159 L.Ed.2d 403. This view is fully consistent with the court's precedents acknowledging that the sentencing judge may take into account any number of factors when meting out a sentence. In *United States v. Grayson* (1978), 438 U.S. 41, 55, 98 S.Ct. 2610, 57 L.Ed.2d 582, the court, in considering a judge's decision to increase the punishment of a defendant on grounds that the defendant had lied during trial, stated:

{¶ 24} "Nothing we say today requires a sentencing judge to enhance, in some wooden or reflex fashion, the sentences of all defendants whose testimony is deemed false. Rather, we are reaffirming the authority of a sentencing judge to evaluate carefully a defendant's testimony on the stand, determine—with a consciousness of the frailty of human judgment—whether that testimony contained willful and material falsehoods, and, if so, assess in light of all the other knowledge gained about the defendant the meaning of that conduct with respect to his prospects for rehabilitation and restoration to a useful place in society. Awareness of such a process realistically cannot be deemed to affect the decision of an accused but unconvicted defendant to testify truthfully in his own behalf."

{¶ 25} Consequently, we hold that the findings required under R.C. 2929.14(C) and 2929.19(B)(2)(d) do not implicate the Sixth Amendment as construed in *Blakely* and *Booker*. Those aspects of S.B. 2 are constitutional.

{¶ 26} Applying these standards, we hold that clear and convincing evidence supported the court's findings that a maximum sentence was appropriate since Lett posed the greatest risk of reoffending in the future.

{¶ 27} The court first considered the minimum sentence and, finding it inappropriate, sentenced appellant to the maximum sentence of 18 months. The record reflects that appellant had previously been convicted of a felony and had served a prior prison sentence. Among other felony convictions, appellant has been convicted multiple times of possession of drugs, drug trafficking, and receiving stolen property. His criminal career began in 1991, when he was a juvenile, and continues through the present time. He has been paroled from prison twice and violated each time. In 2002, appellant was granted shock probation. While on probation, appellant committed the offenses charged in this case as well as the offenses charged in case Nos. CR–443458 and CR–445593. The trial court found that appellant failed to take responsibility for his actions or to show remorse. The trial court stated that an 18–month prison term would be necessary to protect the public, in view of appellant's likelihood of committing future crimes. The trial court noted the same findings and reasons when imposing the maximum five-year sentence in case No. CR–445593. All of these factors amply justify the maximum sentence for Lett's convictions of possession of drugs and drug trafficking; therefore, Lett's assignments of error relating to maximum sentences are overruled.

## IV. Consecutive Sentences

{¶ 28} R.C. 2929.14(E)(4) states:

{¶ 29} "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

{¶ 30} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

{¶ 31} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

{¶ 32} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

{¶ 33} R.C. 2929.14(E)(4) is written in the conjunctive: the court must "make the statutorily enumerated findings and give reasons supporting those findings at the sentencing hearing." *State v. Comer*, 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473, paragraph one of the syllabus.

## A. Historical Perspective

{¶ 34} The concept of consecutive or cumulative [6] sentences existed at common law. As early as 1868, the Supreme Court of Ohio recognized that in the absence of a statute on point, courts could order that sentences be served consecutively. See, e.g., *Williams v. State* (1868), 18 Ohio St. 46, 1868 WL 6, paragraph one of the syllabus ("Where a party is convicted at the same term, of several crimes, each punishable by imprisonment in the penitentiary, it is not error, in sentencing the defendant, to make one term of imprisonment commence when another terminates"). The Supreme Court explained that it held this proposition because consecutive sentences are not additional punishment, but simply punishment for two crimes. Id. at 48. This point continued to be the law well into the 20th century. See *King v. Maxwell* (1962), 173 Ohio St. 536, 537, 20 O.O.2d 152, 184 N.E.2d 380 ("The determination as to whether sentences for different offenses shall run concurrently or consecutively reposes in the discretion of the trial court. Concurrent sentences, however, require a positive act by the trial court, and, in the absence of a declaration thereof by the trial court, it is presumed such sentences will run consecutively"); *Stewart v. Maxwell* (1963), 174 Ohio St. 180, 181, 22 O.O.2d 116, 187 N.E.2d 888 (characterizing the imposition of concurrent sentences as a "reward" because it meant that the offender had been relieved of "paying a part of the penalty for his crimes").

{¶ 35} In 1974, the General Assembly revised the criminal statutes and made significant changes to the manner in which consecutive sentences could be imposed. Adopting the approach taken by the American Law Institute's Model Penal Code, the General Assembly ended the long-standing presumption that

---

6. Cumulative sentences are synonymous with consecutive sentences.

sentences for multiple convictions be served consecutively. Former R.C. 2929.41 stated:

{¶ 36} "(A) Except as provided in division (B) of this section, a sentence of imprisonment shall be served concurrently with any other sentence of imprisonment. In any case, a sentence of imprisonment for misdemeanor shall be served concurrently with a sentence of imprisonment for felony served in a state penal or reformatory institution.

{¶ 37} "(B) A sentence of imprisonment shall be served consecutively to any other sentence of imprisonment, in the following cases:

{¶ 38} "(1) When the trial court specifies that it is to be served consecutively."

{¶ 39} This change in presumption from consecutive sentences to concurrent sentences constituted a sea change in the law, yet it hardly made a ripple in the literature of that period. We can guess that the change in presumption occurred for several reasons: a backlash against prosecutorial overindictment, disparity in the manner in which consecutive sentences were imposed, frustration with the virtually unreviewable nature of consecutive sentencing, and economic considerations relating to the long-term housing of prisoners.

### B. Analysis of R.C. 2929.14(E)(4) and 2929.19(B)(2)(c)

{¶ 40} As our discussion of the historical basis for imposing consecutive sentencing shows, consecutive sentences in Ohio have never been considered "additional" punishment for guilt; therefore, any findings made by the court would not implicate *Blakely* or *Booker*. For over 100 years the courts have presumed that the punishment for each offense would stand on its own and that the decision to run those punishments concurrently would be in the nature of a reward. If an offender was convicted of three counts, each of those counts was considered a separate offense that required a separate punishment.

{¶ 41} Even though Ohio law now presumes that sentences for multiple offenses should be imposed concurrently, that shift in presumption says nothing about the character of the punishment. Instead, it simply reflects the General Assembly's desire to promote consistency and accountability in the way that the courts impose punishment. This reading is entirely consistent with one of the stated purposes of S.B. 2, which is to ensure that a sentence is "consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

{¶ 42} As we understand the arguments by those who would find R.C. 2929.14(E)(4) unconstitutional, they conclude that the imposition of consecutive sentences involves impermissible fact-finding by the sentencing judge. We disagree with that position because *Blakely* applies only to judicial fact-finding

that increases the *maximum* penalty beyond that which could be found on the facts as charged and determined by the trier of fact. Of course, R.C. 2929.14(E)(4) requires the court to make certain findings before imposing consecutive sentences. While we disagree in principle that these findings are "factual" in nature, that disagreement is of no moment, for even if the court were making factual findings, the facts found by the court do not increase the maximum penalty for an individual offense.

{¶ 43} In this case, for example, Lett received a five-year sentence in one case and an 18-month sentence in another case. The court's findings rendered under R.C. 2929.14(E)(4) did nothing to increase those individual sentences—when all was said and done, Lett's sentences on the individual counts did not change. He was still required to serve five years on one count and 18 months on the other count.

{¶ 44} This brings us to what we see as the second flaw with the position of those arguing against constitutionality: they equate consecutive sentences with additional punishment. As the historical development of consecutive or cumulative sentencing demonstrates, at no time has consecutive sentencing been considered additional punishment; rather, it has been considered "full" punishment for all offenses. While the General Assembly has now made concurrent sentences presumptive, that presumption does nothing to change the essential character of consecutive sentencing.

{¶ 45} In fact, the General Assembly has long made consecutive sentencing mandatory in cases involving the use of a firearm, and it is clear that consecutive punishments of this kind do not violate principles of double jeopardy in the sense that there would be multiple punishments for one act. If the imposition of mandatory consecutive sentences does not constitute multiple or increased punishment, there can be no viable argument that the findings that a court must make under R.C. 2929.14(E)(4) increase the maximum punishment an offender can receive based on the facts determined at trial by the trier of fact. Indeed, were that the case, double-jeopardy implications would long ago have been employed to outlaw consecutive sentences as multiple punishments for the same crime. That no such holdings have emanated from any court should be enough to conclude that consecutive sentences do not constitute additional punishment.

{¶ 46} This last point bears additional emphasis—our holding here is neither original nor unique. While *Blakely* and *Apprendi* have generated thousands of opinions across the United States, we are unaware of *any* court in Ohio that has held that a trial court's imposition of consecutive sentences implicates *Blakely* or somehow violates a defendant's Sixth Amendment right to jury trial. Indeed,

every other appellate district in Ohio has held that consecutive sentences do *not* violate *Blakely* or the Sixth Amendment.[7]

{¶ 47} In conformity with the foregoing, we hold that the findings required under R.C. 2929.14(E)(4) and 2929.19(B)(2)(c) as a predicate for imposing consecutive sentences do not violate an offender's Sixth Amendment right to a trial by jury as construed in *Blakely*. Those findings are permissible because they do not increase a sentence beyond the maximum available to the offender. They simply aggregate individual sentences.

{¶ 48} The court ran the 18–month sentence in case No. CR–447030 and the five-year sentence in case No. CR–445593 consecutively to each other. Lett received a total prison sentence of six and one-half years. Before imposing the sentences in each one of these cases, the trial court made the following findings:

{¶ 49} The court found that (1) consecutive sentences were required in this case to protect the public from future crime or to punish Lett, (2) the proposed consecutive sentences are not disproportionate to the seriousness of Lett's conduct, and (3) the proposed consecutive sentence is not disproportionate to the danger that Lett poses to the public. The court then specified that Lett committed these new offenses while on probation and found that a consecutive sentence was necessary to protect the public from any future crime that Lett might commit. R.C. 2929.14(E)(4)(a) and (c).

 {¶ 50} The court's reasons for making the findings were manifest on the record. Lett had numerous felony convictions resulting in prison sentences, including multiple convictions of possession of drugs, drug trafficking, and receiving stolen property. His criminal career began in 1991 when he was a juvenile and continued unabated to the present time. He had twice violated parole. In 2002, Lett received shock probation. While on probation, Lett committed the offenses charged in this case as well as the offenses charged in case Nos. CR–443458 and CR–445593. The trial court found that Lett failed to take responsibility for his actions or show remorse. The trial court stated that an 18–month prison term would be necessary to protect the public and prevent Lett from committing future crimes. We have no doubt that the trial court fully

---

7. *State v. Lowery*, 160 Ohio App.3d 138, 2005-Ohio-1181, 826 N.E.2d 340, ¶ 54; *State v. Sour*, 2d Dist. No. 19913, 2004-Ohio-4048, 2004 WL 1728579, ¶ 7; *State v. Scarberry*, 3d Dist. No. 8–04–32, 2005-Ohio-1425, 2005 WL 696829, ¶ 10; *State v. Wheeler*, 4th Dist. No. 04CA1, 2004-Ohio-6598, 2004 WL 2827714, ¶ 23; *State v. Small*, 5th Dist. No. 04CAA04032, 2005-Ohio-169, 2005 WL 100952, ¶ 42; *State v. Holt*, 6th Dist. No. E–04–004, 2005-Ohio-1554, 2005 WL 737000, ¶ 38–39; *State v. Barnette*, 7th Dist. No. 02 CA 65, 2004-Ohio-7211, 2004 WL 3090228, ¶ 107; *State v. Stearns*, 9th Dist. No. 04CA008515, 2005-Ohio-870, 2005 WL 474859, ¶ 7; *State v. Abdul–Mumin*, 10th Dist. Nos. 04AP–485 and 04AP–486, 2005-Ohio-522, 2005 WL 315062, ¶ 30; *State v. Allen*, 11th Dist. No. 2004–L–038, 2005-Ohio-1415, 2005 WL 694351, ¶ 30; *State v. Collier*, 12th Dist. No. CA2003–11–282, 2005-Ohio-944, 2005 WL 516525, ¶ 41.

complied with R.C. 2929.14(E)(4) and 2929.12(B)(2)(c) when imposing consecutive sentences on Lett; therefore, Lett's assignments of error relating to consecutive sentences are overruled.

## V. Conclusion

{¶ 51} As we earlier noted, the issues raised in this case have deeply divided this court. It is our sincere hope that the Ohio Supreme Court will quickly and definitively resolve the issues raised in light of *Blakely* and *Booker,* yet until that time, we affirm Lett's sentences and confirm that S.B. 2 remains the law in this district.

Judgment affirmed.

MICHAEL J. CORRIGAN, J., writing for the majority on the constitutionality of maximum sentences.

PATRICIA A. BLACKMON, FRANK D. CELEBREZZE JR., COLLEEN CONWAY COONEY, ANTHONY O. CALABRESE JR., MARY EILEEN KILBANE and CHRISTINE T. MCMONAGLE, JJ., concur.

MICHAEL J. CORRIGAN, J., writing for the majority on the constitutionality of consecutive sentences.

ANN DYKE, PATRICIA A. BLACKMON, KENNETH A. ROCCO, FRANK D. CELEBREZZE JR., JAMES J. SWEENEY, COLLEEN CONWAY COONEY, ANTHONY O. CALABRESE JR., MARY EILEEN KILBANE and CHRISTINE T. MCMONAGLE, JJ., concur.

SEAN C. GALLAGHER, J., concurring in part as to the constitutionality of the court's en banc procedure.

PATRICIA A. BLACKMON, FRANK D. CELEBREZZE JR., JAMES J. SWEENEY, COLLEEN CONWAY COONEY, ANTHONY O. CALABRESE JR., KENNETH A. ROCCO, MARY EILEEN KILBANE and MICHAEL J. CORRIGAN, JJ., concur.

DIANE KARPINSKI, J., dissenting as to the constitutionality of the court's en banc procedure.

CHRISTINE T. MCMONAGLE, J., concurs only as to Part I of Judge KARPINSKI's dissenting opinion.

JAMES J. SWEENEY, J., dissents on the constitutionality of maximum sentences.

ANN DYKE, DIANE KARPINSKI, KENNETH A. ROCCO and SEAN C. GALLAGHER, JJ., concur.

SEAN C. GALLAGHER, J., concurs in judgment only as to the imposition of consecutive sentences, but dissents as to the constitutionality of consecutive sentences under portions of S.B. 2.

DIANE KARPINSKI, J., concurs only as to that portion of Judge GALLAGHER's dissenting opinion that would hold that the statutes requiring findings for consecutive sentences are unconstitutional.

SEAN C. GALLAGHER, Judge, concurring in part and dissenting in part.

## I. En Banc

{¶ 52} Initially, I write in support of the majority view that the en banc process is constitutional. I respectfully disagree with Judge Karpinski's view that Section 3(A), Article IV, of the Ohio Constitution limits district decisions to simply three-judge panels. I believe that the constitutional language must be read in the context of Ohio's judicial history.

{¶ 53} Although Judge Karpinski is correct that the reference to the number "three" in the Ohio Constitution did not change as appellate districts were enlarged, a review of Ohio's judicial history shows that the reference to that number reflected, in part, the limited size of the early Ohio judiciary. Historically, the number "three" had more to do with the minimum requirement of a quorum than it did with a desire to limit important district decisions to less than a majority of the court. Simply put, there were far fewer judges to decide cases in the 19th century, and three judges became the smallest acceptable number for proper review.[8]

{¶ 54} The en banc process is embedded in American jurisprudence. "The en banc process now authorized for the district courts is designed to help the district courts avoid conflict, assure harmonious decisions within the courts' geographic boundaries, and develop predictability of the law within their jurisdiction. Consistency of decisions within each district is essential to the credibility of the district courts." *Chase Fed. Sav. & Loan Assn. v. Schreiber* (Fla.1985), 479 So.2d 90. Also, the United States district courts have an en banc process. See *Textile Mills Securities Corp. v. Commr. of Internal Revenue* (1941), 314 U.S. 326, 62 S.Ct. 272, 86 L.Ed. 249.

---

8. The modern courts of appeals in Ohio can trace their origin to the Constitutional Convention of 1851. The district courts were, at times, composed of two of the common pleas judges of the respective districts and one of the Supreme Court judges, any three of whom formed a quorum. They were required to hold at least one term in each county of the district annually. See F.R. Aumann, The Development of the Judicial System of Ohio (1998), 41 Journal of the Ohio Historical Society 195. Thus, the limits were largely imposed by limitations on the size of the judiciary at the time, rather than on a predetermined formula to involve only three judges in a decision.

{¶ 55} I recognize that our decision to consider these issues in an en banc proceeding puts us in conflict with the Tenth Appellate District in *Schwan v. Riverside Methodist Hosp.* (Feb. 25, 1982), Franklin App. No. 81–AP–158, 1982 WL 3997, which is cited by Judge Karpinski. It is unclear, however, whether the Tenth District had an en banc procedure in place when it decided the *Schwan* case. The question in that case arose only after the filing of a motion to reconsider an earlier ruling.

{¶ 56} This is not to suggest that every case or issue, or every aggrieved litigant, requires or is entitled to an en banc review. The decision to consider a case or issue en banc is left to the exclusive determination of the majority of judges in a multicourt district.[9]

{¶ 57} For too long, trial court judges and litigants in this district have endured the prospect of having inconsistent decisions on similar issues affect determinations of law. Further, limiting the decision-making process on critical legal issues to three judges flies in the face of the long-established and significant principle of stare decisis. As a result, I believe the en banc process is constitutional and is supported by Ohio's long judicial history. Last, consistency in our district is of paramount concern and is long overdue. For these reasons, I support the en banc process and agree to abide by the majority decision on the issues decided here in this and all future cases.

## II. Consecutive Sentences

{¶ 58} While I am bound by the decision of the majority and will follow and apply its rule of law in future cases, I write separately to address concerns regarding the application of the Sixth Amendment to consecutive sentences imposed under the statutes adopted under S.B. 2. Judge James J. Sweeney has addressed the maximum-sentence issue, and I concur in that opinion.

{¶ 59} As the majority has noted, according to *Apprendi v. New Jersey* (2000), 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435, "[o]ther than the fact of a prior conviction, *any fact* that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." (Emphasis added.) This decision has created considerable debate in Ohio legal circles over whether Sixth Amendment rights are violated by Ohio's S.B. 2 sentencing statutes.[10]

---

**9.** The approved en banc process for the Eighth District Court of Appeals is outlined in the court's Standing Resolution of 1976 as amended through September 3, 2003, in Sections 8(b)(i), (ii), (iii), and (iv).

**10.** For Ohio, the debate has largely focused on four specific areas dealing with trial courts making findings or giving reasons to support deviating from presumed sentences: first, a trial

{¶ 60} Although the state of Washington and the federal system employed a "presumptive" guideline sentencing format, Ohio, like several other states, is a "presumptive" nonguideline sentencing state. The distinction, for *Apprendi, Blakely,* and *Booker* purposes, in my view, is immaterial.[11]

{¶ 61} In Ohio, a trial court may impose consecutive sentences on a defendant only after making specific findings outlined under R.C. 2929.14(E)(4). R.C. 2929.14(E)(4) provides that a trial court may impose consecutive sentences only when it concludes that the sentence is "(1) necessary to protect the public from future crime or to punish the offender; (2) not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) the court finds one of the following: (a) the crimes were committed while awaiting trial or sentencing, under sanction, or under post-release control; (b) the harm caused by multiple offenses was so great or unusual that a single prison term would not adequately reflect the seriousness of his offense; or (c) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime." *State v. Stadmire,* Cuyahoga App. No. 81188, 2003-Ohio-873, 2003 WL 549912, ¶ 66.

{¶ 62} In addition, R.C. 2929.19(B)(2) provides that "[t]he court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances: * * * (c) If it imposes consecutive sentences under section 2929.14 of the Revised Code, its reasons for imposing the consecutive sentences."

{¶ 63} Thus, a trial court is required to make at least three findings under R.C. 2929.14(E)(4) prior to sentencing an offender to consecutive sentences and must give its reasons for imposing consecutive sentences pursuant to R.C. 2929.19(B)(2)(c). *Stadmire,* supra; see, also, *State v. Comer,* 99 Ohio St.3d 463,

---

court's findings involving R.C. 2929.13(B)(1), (B)(2)(a), (B)(2)(b), and R.C. 2929.19(B)(2)(a), where a trial court makes findings in support of a decision to impose a term of incarceration or a community-control sanction in felony cases of the fourth and fifth degree; second, a trial court's findings required under R.C. 2929.14(B) when a court imposes more than the minimum sentence for offenders who have not previously served a prison term; third, the trial court's findings required to impose maximum sentences under R.C. 2929.14(C) and 2929.19(B)(2)(d) and (e); and fourth, the situation faced here, where the court must make findings under R.C. 2929.14(E)(4) and 2929.19(B)(2)(c) to support consecutive sentences.

11. Some have viewed Ohio as an "indeterminate" sentencing state; however, that designation can be applied to sentences in Ohio only when no judicial findings are utilized. When findings are made to justify an enhanced sentence, Ohio (like Alaska, Arizona, California, Colorado, Indiana, New Jersey, and New Mexico) is a "presumptive" sentencing state with *Blakely* and *Booker* implications. A defendant is presumed to receive a designated sentence absent a trial court's findings and reasons elevating or decreasing the sentence within a range. See Jon Wool and Don Stemen, Aggravated Sentencing: Blakely v. Washington: Practical Implications for State Sentencing Systems (2004), 17 Fed.Sent.R. 60.

2003-Ohio-4165, 793 N.E.2d 473. These findings, together with the trial court's reasons for the findings, must be made on the record and must be supported by clear and convincing evidence. R.C. 2929.19(B)(2)(e); 2953.08(G)(1); *State v. Comer*; *State v. Edmonson* (1999), 86 Ohio St.3d 324, 715 N.E.2d 131.

{¶ 64} Although I concur with the majority's decision to affirm the consecutive sentences imposed, I respectfully disagree with the view that the language requiring "findings and reasons" to support imposing consecutive sentences in R.C. 2929.14(E)(4) and 2929.19(B)(2)(c) is constitutional.

{¶ 65} I believe that *Apprendi, Blakely,* and *Booker* are applicable to R.C. 2929.14(E)(4) and 2929.19(B)(2)(c) and would find that language mandating judicial findings in support of consecutive sentences in the S.B. 2 statutes unconstitutional. Specifically, I would sever *only* the offending language requiring "findings" under R.C. 2929.14(E)(4) and 2929.19(B)(2)(c) and affirm the decision to impose consecutive sentences under the "reasonableness" standard stated in *Booker,* as outlined below.

{¶ 66} The Sixth Amendment principles outlined in *Apprendi, Blakely,* and *Booker* apply to all of those portions of Ohio's sentencing scheme that require judicial fact-finding to justify the imposition of sentences greater than the statutory maximum. While I acknowledge the majority's principle that "each offense stands on its own," I see no distinction between unconstitutional "findings" or "reasons" justifying the imposition of one sentence and those involving consecutive sentences. Although I agree with the majority's view that Ohio courts have typically presumed the propriety of separate punishments for each offense, the statutory language in S.B. 2 created a condition in which the opposite is now true. Even the majority recognizes that under S.B. 2, absent the court's additional findings, there is a presumption of concurrent sentences.

{¶ 67} Because the findings used to impose consecutive sentences here were not admitted by Lett nor made by the jury, I would find the language in the statutes mandating the "findings" and "reasons" to deviate from the required sentence unconstitutional.

{¶ 68} R.C. 2929.14(E)(4), 2929.19(B)(2)(e), and 2953.08(G)(1) create a rebuttable presumption that offenders with multiple convictions appearing for sentencing will receive concurrent sentences. Nevertheless, the legislature intended to provide for a departure from that presumption depending on whether the trial court makes findings on the record.

{¶ 69} Under a determination that it is unconstitutional for a judge to make findings of fact that increase the sentence beyond the mandatory minimum, the offending statutory provisions, including the interrelated rebuttable presumption, must be severed. Nevertheless, the court has an obligation to preserve as much

of the legislation as is constitutionally permissible. See *State ex. rel. Hinkle v. Franklin Cty. Bd. of Elections* (1991), 62 Ohio St.3d 145, 149, 580 N.E.2d 767, and *State ex rel. Doersam v. Indus. Comm.* (1989), 45 Ohio St.3d 115, 121, 543 N.E.2d 1169.

{¶ 70} The result is *not* to require the trial court to impose concurrent sentences in such instances. As the majority has already noted, this was not the intent of the legislature, which provided a method for the imposition of consecutive sentences. Thus, *only* the offending mandatory language of the legislation must be severed from the statutory scheme. See R.C. 1.50 and *United States v. Booker* (2005), 543 U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621; see, also, *State ex rel. Mason v. Griffin*, 104 Ohio St.3d 279, 2004-Ohio-6384, 819 N.E.2d 644, ¶ 17 (instructing that the judge should have either "(1) appl[ied] the statutes as if *Blakely* did not render them unconstitutional and conduct a sentencing hearing without a jury or (2) [found] the statutes unconstitutional under *Blakely* and refuse to impose those enhancement provisions he deemed unconstitutional").[12]

{¶ 71} If *Apprendi, Blakely,* and *Booker* are the illness, then the United States Supreme Court's decision in *Booker* is the medicine. Under the *Booker* analysis, with the removal of the offending statutory provisions, a determination must be made as to whether the defendant's consecutive prison sentences were reasonable in light of the record and the remaining provisions of the sentencing statutes.[13] In my view, as the majority has already noted, the trial court clearly addressed the underlying original purpose and the legislative intent of the statute by the discussion on the record by the trial court summarized in the majority opinion. This determination by the trial court satisfies the "reasonableness" standard outlined in *Booker*.[14]

{¶ 72} I believe that the provisions of R.C. 2929.11 and 2929.12 are guidelines, whereas the requirements of "findings" and "reasons" to deviate from the presumptive sentence are unconstitutional. While judges are certainly free and even encouraged to give reasons supporting why they selected a particular sentence, mandating that they do so under these facts clearly violates the United

---

12. It is not the concept of consecutive sentences that is unconstitutional; rather, it is the language requiring findings and reasons to justify their imposition that is unconstitutional.

13. Once the requirement for mandatory findings and reasons is removed, the application of the clear-and-convincing standard is rendered moot and replaced by a "reasonableness" standard. See *Booker*, supra.

14. The reasonableness standard has been defined as "something more than 'not arbitrary or capricious' and something less than 'supported by substantial evidence.'" *Wellek v. United States* (N.D.Ill.2004), 324 F.Supp.2d 905, 911, quoting *Loretto v. United States* (E.D.Pa.1977), 440 F.Supp. 1168, 1172. See, also, *Varjabedian v. United States* (D.Mass.2004), 339 F.Supp.2d 140, 144.

States Constitution. Thus, I believe that the imposition of consecutive sentences should be reviewed under the reasonableness standard outlined in *Booker*. Although I do not agree with the majority's analysis, nevertheless, I will be bound by it in future cases because of the majority en banc decision.

KARPINSKI, Judge, dissenting.

{¶ 73} I respectfully dissent, first, because I find unconstitutional the en banc process this court used to arrive at a decision in this case.

## I

{¶ 74} I find no authority for an Ohio appellate court to rule en banc. Section 3(A), Article IV of the Ohio Constitution provides: "In districts having additional judges, three judges shall participate in the hearing and disposition of each case." Ohio's Constitution does not provide for more than three judges to serve on an appellate panel. Thus a ruling of more than the three scheduled to serve on the panel would have no effect.

{¶ 75} In *Schwan v. Riverside Methodist Hosp.* (Feb. 25, 1982), Franklin App. No. 81–AP–158, 1982 WL 3997, the Tenth Appellate District overruled a motion for rehearing en banc because such a hearing is "precluded" by this provision in the Constitution. I agree with this reading of Ohio's Constitution.

{¶ 76} There is no authority for an appellate panel of more than three judges. Nor is there any authority for an entire court sitting en banc to overrule a majority decision of a three-judge panel. It would be similarly improper for an administrative judge to assign a new member to a panel for the sole purpose of writing an opinion reflective of the entire court or of providing a vote necessary to create a majority consistent with an en banc court.

{¶ 77} The basis for an en banc court in the federal judicial system sharply highlights the absence of any similar authority in Ohio. Section 46(c), Title 28, U.S.Code expressly provides for hearing or rehearing before an appellate court "in banc." That provision was first codified in 1948. So the idea of an en banc procedure was certainly known to Ohio and to the Ohio legislature during all its amendments to the Code since 1948. No such comparable authority exists in Ohio, under either the Ohio Constitution or its statutes.

{¶ 78} Congress enacted an en banc provision in response to a decision of the United States Supreme Court: *Textile Mills Securities Corp. v. Commr.* (1941), 314 U.S. 326, 62 S.Ct. 272, 86 L.Ed. 249. In his article The Politics of En Banc Review in the "Mini–Supreme Court" (1997), 13 J.L. & Politics 377, Christopher P. Banks describes the creation of an en banc jurisdiction in the federal courts as "the result of a historical accident." As the court in *Textile Mills* explained:

The Judicial Code abolished the existing circuit courts. § 297. It carried over into § 117 without substantial change the provision of § 2 of the Act of March 3, 1891 that there should be a circuit court of appeals in each circuit "which shall consist of three judges." Though this section was said merely to represent existing law, § 118 of the Judicial Code provided for four circuit judges in the Second, Seventh, and Eighth Circuits, two in the Fourth Circuit, and three in each of the others. An anomalous situation was presented if § 117 were to be taken at that juncture as meaning that the circuit court of appeals would continue to be composed of only three, in face of the fact that there were more than three circuit judges in some circuits.

*Textile Mills*, 314 U.S. at 329, 62 S.Ct. 272, 86 L.Ed. 249, footnote omitted. Thus the Supreme Court had to resolve this "anomalous situation."

{¶ 79} No such anomaly occurs in the Ohio Constitution, which says, "The state shall be divided by law into compact appellate districts in each of which there shall be a court of appeals consisting of three judges. Laws may be passed increasing the number of judges in any district wherein the volume of business may require such additional judge or judges. *In districts having additional judges, three judges shall participate in the hearing and disposition of each case.*" (Emphasis added.) Section 3(A), Article IV, Ohio Constitution.

{¶ 80} Judge Gallagher argues that the number "three" in the Ohio Constitution "historically" had more to do with the minimum requirement of a "quorum." Since the word "quorum" was deleted from both the Constitution and the statute, however, we must accord special significance to that change. Its deletion implies that the number three no longer describes a minimum as in a quorum. The replacement for "quorum" was "shall participate in." [15]

{¶ 81} Currently, the Revised Code specifies, "In the eighth district, any three judges shall *comprise* the court of appeals in the hearing and disposition of cases in accordance with any local rules of practice and procedure that may be adopted by the judges of the court." (Emphasis added.) R.C. 2501.012(A). The word "comprise" defines what the hearing court "consists of." Unlike the synonym "include," "comprise" connotes that there is nothing outside what is listed: here, "three judges."

{¶ 82} "In the construction of a statute the primary duty of the court is to give effect to the intention of the Legislature enacting it." *Cochrel v. Robinson* (1925), 113 Ohio St. 526, 149 N.E. 871, paragraph four of the syllabus, cited by

---

**15.** In 1959, Section 6, Article IV of Ohio's Constitution was amended and also renumbered as Section 3. At that time, the statute specified: "In districts having additional judges, three judges shall participate in the hearing and disposition of each case." That language is identical to that found in the Ohio Constitution.

*Clark v. Scarpelli* (2001), 91 Ohio St.3d 271, 274, 744 N.E.2d 719. "In order to determine the intent of the General Assembly in enacting legislation the court must give effect to the words used in the statute." *Clark*, at 274, 744 N.E.2d 719, citing *Bernardini v. Conneaut Area City School Dist. Bd. of Edn.* (1979), 58 Ohio St.2d 1, 4, 12 O.O.3d 1, 387 N.E.2d 1222.

{¶ 83} The history of R.C. 2501.012(A) demonstrates that the legislature had ample opportunity to provide for an en banc procedure by which an entire court could hear a case. In 1959 the Ohio Constitution was amended to authorize the legislature to pass laws to increase the number of judges. Section 6, Article IV, Ohio Constitution. In 1961, three judges were added to the Eighth District. In 1970, R.C. 2501.012 gave a general provision for districts with more than three judges, stating that *in such districts,* "any three judges shall comprise the court of appeals in the hearing and disposition of cases * * *." (Emphasis added.)

{¶ 84} Later, the district was specifically named. This statute was repeatedly amended in 1976, 1980, 1984, 1986, and 1990. Each time, the legislature specifically addressed the particular district: *"In the eighth district,* any three judges shall comprise the court of appeals in the hearing and disposition of cases * * *." (Emphasis added.) These amendments from 1976 through 1990 often added judges to the court. In 1976, the number of judges on the Eighth District Court of Appeals changed from six to nine. In 1990, the number changed from nine to twelve. Each time the number of judges changed, the legislature retained the sentence specifying the number of judges as three for comprising the panel to hear and dispose of a case.

{¶ 85} Over the years, additional judges were also added to some of the other districts. With each change, the legislature retained the language specifying a three-judge panel. Currently, the statute specifies a three-judge panel and reiterates this for each specific district in which additional judges have been added. There is a separate and identical provision for nine different districts: R.C. 2501.012(A), (B), (C), (D), and (E) and 2501.013(A), (B), (C), and (D)—a total of nine specific provisions, each time reiterating that three judges will hear and dispose of a case.

{¶ 86} The Ohio Legislature cannot be presumed to have been unaware of the en banc procedure in the federal courts—a procedure codified in 1948 for federal courts. Ohio has no such statute. Indeed, the language of the Ohio Revised Code appears to have been crafted to avoid the anomaly that the United States Supreme Court addressed.

{¶ 87} A major difference between Ohio's Article IV and Section 117 of the Judicial Code, Section 43, Title 28, U.S.Code, is that Article IV specifies three judges in the explicit context of "the hearing and disposition of each case." In contrast, the United States Supreme Court, in *Textile Mills*, 314 U.S. at 332, 62

S.Ct. 272, 86 L.Ed. 249, observed that Section 117 never addresses the "sitting" court or "the number who may hear and decide a case." The explicit language of the Ohio Constitution and the Ohio Revised Code prevents any ambiguity or anomaly. Nor has any judge on this court asserted otherwise.

{¶ 88} With this history of amendments and increases in the number of judges sitting on district courts, as well as the relatively new changes in the relevant statute, and the explicit language of the statute assigning three judges to hear and dispose of a case, there can be no doubt as to the intent of the legislature. Therefore, this court is obliged to follow the plain language of the Ohio Constitution and corresponding statutes.

{¶ 89} "It is a cardinal rule that a court must first look to the language of the statute itself to determine the legislative intent. See, e.g., *Katz v. Department of Liquor Control* (1957), 166 Ohio St. 229 [2 O.O.2d 54, 141 N.E.2d 294]. If that inquiry reveals that the statute conveys a meaning which is clear, unequivocal and definite, at that point the interpretative effort is at an end, and the statute must be applied accordingly. *Sears v. Weimer* (1944), 143 Ohio St. 312 [28 O.O. 270, 55 N.E.2d 413]." *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 105–106, 65 O.O.2d 296, 304 N.E.2d 378. I believe that this court is at that point.

{¶ 90} While I see no authority for an Ohio court of appeals to hear a case en banc, I also see much reason not to. Professor Banks observed that "Frank M. Coffin, a veteran judge on the U.S. Court of Appeals for the First Circuit, once remarked that courts sitting en banc 'resemble a small legislature more than a court.'" The Politics of En Banc Review in the "Mini–Supreme Court," 13 J.L. & Politics at 388. He reports that "critics typically argue * * * that en banc review is counterproductive because it: promotes judicial inefficiency,[16] undermines the finality of panel decision-making, threatens court collegiality, and compromises judicial integrity." Id. at 388. See Judge Edwards's concurring opinion in *Bartlett v. Bowen* (C.A.D.C.1987), 824 F.2d 1240, 1243–1244.

{¶ 91} An en banc procedure is even more superfluous, to use the word of Judge Laurence Silberman, *Bartlett,* supra, concurring opinion, at 1246, when the Ohio Supreme Court has already accepted the same issues and both sides have submitted briefs.

{¶ 92} I also find it improvident to hear en banc a matter currently in such flux nationally. In her dissent in *Apprendi,* Justice O'Connor exposed a conflict in

---

**16.** I note, furthermore, that the en banc procedure in a court of 12 judges is potentially even more inefficient because of the possibility of a tie vote. There is a special reason for having panels of three judges: the likelihood of a majority. With an en banc panel, on the other hand, a tie vote throws the case back to the three-judge panel from which the matter arose— after much waste of judicial time.

the various analyses provided in *Jones v. United States* (1999), 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311, and *McMillan v. Pennsylvania* (1986), 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67. She noted that the lead opinion in *Apprendi v. New Jersey* endorsed the following: " ' "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that ***increase the prescribed range of penalties*** to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt." ' " Ante, 530 U.S. 466, 120 S.Ct. at 2363, 147 L.Ed.2d 435 ( [italics] added) (quoting *Jones,* supra, at 252–253, 119 S.Ct. 1215, 143 L.Ed.2d 311 (STEVENS, J., concurring)). Second, the Court endorses the rule as restated in Justice SCALIA's concurring opinion in *Jones.* See ante, 530 U.S. 466, 120 S.Ct. at 2363, 147 L.Ed.2d 435. There, Justice SCALIA wrote: '[I]t is unconstitutional to remove from the jury the assessment of facts ***that alter the congressionally prescribed range of penalties* to which a criminal defendant is exposed.**' *Jones,* supra, at 253, 119 S.Ct. 1215, 143 L.Ed.2d 311 ( [italics] added). * * * In *McMillan,* however, we rejected such a rule to the extent it concerned those facts that **increase or alter the minimum penalty** to which a defendant is exposed. Accordingly, it is incumbent on the Court not only to admit that it is overruling *McMillan,* but also to explain why such a course of action is appropriate under normal principles of *stare decisis.*" (Bold added.) *Apprendi,* 530 U.S. at 533, 120 S.Ct. 2348, 147 L.Ed.2d 435 (O'Connor, J., dissenting). This passage was also cited by Justice Thomas in his dissent in *Harris v. United States* (2002), 536 U.S. 545, 582, 122 S.Ct. 2406, 153 L.Ed.2d 524.

{¶ 93} This subtle shift from "increase or alter the minimum penalty" to "increase the congressionally prescribed range of penalties" or "alter" them is only one of many indications that members of the United States Supreme Court are in the process of evolving and more precisely carving out the principles upon which Ohio's sentencing system will be judged. Indeed, the makeup of the majority that voted on recent cases is also in motion.

{¶ 94} Finally, I object to the specific procedure this court has followed. In using an en banc procedure, this court has been operating under an amendment to Article 8(b) of standing resolution en banc conference, found in Appendix C of the local rules. This rule authorizes the Administrative Judge of this court to convene the court to sit en banc to resolve the issues involved in the manner described below.

(ii) In the event the assigned panel hearing an appeal determines that *it is necessary to overrule a previous decision of this Court,* reported or unreported, *or to issue a decision in conflict therewith,* any judge on the panel shall request the Chief Justice to call an en banc conference of the Court to consider the issue. *The parties will be requested to file supplemental briefs on the*

*conflicting issues.* \* \* \* Oral rehearing en banc will not be allowed except by majority vote of the en banc court.

(iii) Following receipt of the supplemental briefs, if any, the Chief Justice shall call an en banc conference \* \* \*.

{¶ 95} This rule requires that a previous decision be identified for purposes of determining whether it is necessary to overrule it or, at the very least, to issue a decision in conflict with it. In the case at bar, the majority opinion does not expressly identify any such case. Since such a case is a necessary condition to commence the en banc process, it should be identified in the en banc decision.

{¶ 96} More important is the next stage: requesting parties to file supplemental briefs on the issues in conflict. Whereas the rule goes on to clearly specify that an oral rehearing is solely at the option of the majority, the rule does not describe the request for supplemental briefs as optional. Nor would a party sua sponte file a supplemental brief, since the parties have not yet been advised that their case is in an en banc process. The rule specifies the sequence to be followed: the en banc conference follows receipt of the supplemental briefs. While the rule allows for the possibility that parties might not submit briefs, it is clear that "[t]he parties will be requested to." In the case at bar, however, this court did not request supplemental briefs. Because of the significant impact to the Ohio sentencing system if it is found to be unconstitutional, there is even greater reason for this court to seek out all possible arguments.

{¶ 97} Thus I include in my dissent my objection to this court's failure to comply not only with the limitations imposed by the Ohio Constitution and the Ohio Revised Code but also with its own stated procedure.

## II

{¶ 98} I also dissent, however, because I disagree with the majority opinion's conclusion that *Apprendi, Blakely,* and *Booker* do not apply to consecutive sentences. To restrict the applicability of these cases to those situations in which a defendant is sentenced for a single offense is too narrow and mechanical a view of those cases. The principle underlying those cases is quite broad: only juries can make findings that justify enhancing a punishment. In *Blakely,* the Supreme Court held:

Our precedents make clear, however, that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* See *Ring* [*v. Arizona* (2002)], *supra* [536 U.S. 584], at 602, 122 S.Ct. 2428 [153 L.Ed.2d 556] (" 'the maximum he would receive if punished according to the facts reflected in the jury verdict alone' "), quoting *Apprendi, supra,* at 483, 120

S.Ct. 2348 [147 L.Ed.2d 435]; *Harris v. United States,* 536 U.S. 545, 563, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (plurality opinion) (same); cf. *Apprendi,* supra, at 488, 120 S.Ct. 2348 [147 L.Ed.2d 435] (facts admitted by the defendant). In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," *Bishop, supra,* § 87, at 55, and the judge exceeds his proper authority.

(Emphasis sic.) Id., 542 U.S. 296, ——, 124 S.Ct. at 2537, 159 L.Ed.2d 403.

{¶ 99} In the case at bar, the court could order that the sentences be consecutive only by making judicial findings beyond those either determined by a jury or stipulated to by the defendant. Applying *Blakely* to Ohio sentencing law, I must conclude, therefore, that a judge has no authority to impose a consecutive sentence, because to do so requires additional findings other than simply a prior conviction.

{¶ 100} *Blakely* has not only provided a very restrictive definition of statutory maximum, it also has limited the role of the court in all "exceptional" sentences, that is, whenever state law requires additional findings (other than a prior conviction) to which a defendant has not stipulated.

{¶ 101} As the Supreme Court explained in *Blakely*: "When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' [1] *Bishop* [Criminal Procedure (2d Ed.1872) ] § 87, at 55, and the judge exceeds his proper authority." *Blakely,* 542 U.S. at ——, 124 S.Ct. at 2537, 159 L.Ed.2d 403. There can be no doubt that a punishment is enhanced when it is prescribed as consecutive.

{¶ 102} In saying that "[n]o findings made by the trial court can enhance the sentence beyond the statutory maximum," the majority ignores the definition of "statutory maximum" specifically stated in *Blakely*:

In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," Bishop, *supra,* § 87, at 55, and the judge exceeds his proper authority.

*Blakely,* 542 U.S. at ——, 124 S.Ct. at 2537, 159 L.Ed.2d 403.

{¶ 103} The majority apparently discounts this explicit definition because of its context: Ohio's hybrid sentencing scheme "imposes determinate sentences from an indeterminate range of possible terms," whereas the sentencing system in

*Blakely* was a grid. This comparison does not focus, however, on what the United States Supreme Court saw as the key in constitutional analysis: required judicial findings.

{¶ 104} Recently, the Indiana Supreme Court analyzed the constitutionality of its sentencing scheme, which is also a hybrid with major features similar to Ohio's. *Smylie v. Indiana* (2005), 823 N.E.2d 679. The Indiana Supreme Court reviewed one particular sentence: for defendant's crime of child solicitation, the Indiana Code provides a "fixed term" of one and one-half years, with the maximum being the addition of one and one-half years for aggravating circumstances and the minimum being the subtraction of up to one year for mitigating circumstances. Ind.Code Ann. § 35–50–2–7. Finding four aggravating circumstances and two mitigating circumstances, the trial court sentenced an offender to two-year terms on each of two counts and ordered them to be served consecutively, but suspended six months; so the total was three and one-half years. *Smylie,* supra, at 682.

{¶ 105} The Supreme Court of Indiana provided this analysis: "Because the judge has to find additional facts to impose a sentence higher than the presumptive sentence, the presumptive sentence is the 'relevant statutory maximum.' " Id. at 684. Applying *Blakely*'s definition of "statutory maximum," the Indiana Supreme Court decided that Indiana's "fixed terms" were "much like Washington's presumptive ranges." The court explained:

Indiana's sentencing scheme provides a "fixed term" *presumptive sentence* for each class of felonies. * * * These statutes also create upper and lower boundaries for each felony sentence. In deciding on whether to depart from the presumptive sentence, the trial judge must consider seven enumerated factors and may consider various other aggravating and mitigating factors. * * *

* * *

For *Blakely* purposes, Indiana's "fixed term" is the functional equivalent of Washington's "standard sentencing range." Both establish a mandatory starting point for sentencing criminals based on the elements of proof necessary to prove a particular offense and the sentencing class into which the offense falls. *The trial court judge then must engage in judicial fact-finding during sentencing if a sentence greater than the presumptive fixed term is to be imposed.* (Emphasis added.)

*Smylie,* 823 N.E.2d at 683.

{¶ 106} The court emphasized:

It is this type of judicial fact-finding that concerned the Court in *Blakely.* "When a judge inflicts punishment that the jury's verdict alone does not allow,

the jury has not found all the facts 'which the law makes essential to the punishment.'" *Blakely,* 542 U.S. at ——, 124 S.Ct. at 2537, 159 L.Ed.2d 403 (quoting 1 J. Bishop, Criminal Procedure § 87 (2d ed. 1872)).

{¶ 107} The Indiana Supreme Court concluded that it saw "little daylight between the *Blakely* holding and the Indiana system." *Smylie,* supra, 823 N.E.2d at 683. The court, therefore, held that portions of the Indiana sentencing scheme were unconstitutional.

{¶ 108} Like Indiana's system, Ohio's system has presumptions: the presumption of the minimum, of less than the maximum, and of concurrent sentences.[17] These presumptions can be overcome if the judge makes additional findings. For example, in Ohio the aggravating factor for more than the minimum is the finding that the offender has served a prison term or that the minimum term would "demean the seriousness of the offense" or "will not adequately protect the public from future crime by the offender or others."

{¶ 109} A comparison with *McMillan v. Pennsylvania* (1986), 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67, helps to focus on the significance of these findings to the application of *Blakely.* In *McMillan,* the sentence did not run afoul of Sixth Amendment rights, because the state permitted the trial judge to order more than the minimum sentence *even if the judge did not make any findings.* Not so in Ohio, where judges are required to make findings when they impose a sentence that goes to a maximum in the prescribed range or above the minimum for someone who has not been in prison. It is that requirement of findings that is the key and the basis on which *Blakely* distinguished *McMillan. Blakely,* 542 U.S. at ——, 124 S.Ct. at 2538, 159 L.Ed.2d 403.

{¶ 110} The majority also observes that Ohio's sentencing scheme specifies possible terms and, therefore, defendants know what the possible maximum term will be for their crimes. This specificity is also in Indiana's scheme. The Indiana Supreme Court observed that the "unexpected increase" that Justice Scalia discussed did not arise in Indiana, because defendants were "aware of the maximum sentence that can be imposed for any given felony, namely, the range listed in the sentencing statutes." The Indiana court noted that "Washington's system gave similar notification"; that is, "a sentence may be increased to a statutory upper limit if 'substantial and compelling reasons justify an exceptional sentence.'" The court further observed, however, that the "increase was 'unexpected' in one important sense, namely that the aggravators used to support a

---

17. Indiana has two of these presumptions. The Indiana court did not find its sentencing for multiple counts running afoul of *Blakely,* because Indiana statutes "do not erect any target or presumption concerning concurrent or consecutive sentences." *Smylie,* supra, 823 N.E.2d at 686. Ohio, however, has a presumption of concurrent sentences, with a few exceptions. R.C. 2929.41.

departure from the presumptive are not charged in the indictment." *Smylie*, 823 N.E.2d at 684–685. Nor are they in Ohio.

{¶ 111} The majority further distinguishes *Booker* and *Blakely* on the basis that the facts the court relied upon for sentencing could "easily have been charged as elements of the offense because they were objective findings and thus readily amenable to disposition at trial." I appreciate this distinction and it might some day be the basis of a new direction for the Supreme Court. However the court has not enunciated this distinction, at least not in its most emphatic statements explaining the underlying principles of the recent sentencing cases. Rather, it focuses on what can be derived from the jury verdict alone, not on what could be derived from a jury verdict if the facts were amenable to and had been specified in the indictment.

{¶ 112} Since *Blakely* was issued, the United States Supreme Court has again enunciated this principle and explicitly reaffirmed its holding in *Apprendi*. "*Any fact (other than a prior conviction) which is necessary to support a sentence* exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." (Emphasis added.) *United States v. Booker* (2005), 543 U.S. ——, ——, 125 S.Ct. 738, 756, 160 L.Ed.2d 621.

{¶ 113} In a recent decision, the United States Supreme Court has further clarified just how far even a prior conviction can be used. *Shepard v. United States* (2005), —— U.S. ——, 125 S.Ct. 1254, 161 L.Ed.2d 205. A finding that relies upon "a fact about a prior conviction" is also questionable. In other words, to find that the public needs protection from a defendant because of his "prior judicial record" has gone a step beyond the specific fact of the conviction itself.

{¶ 114} It does not matter for purposes of Sixth Amendment analysis whether there are one or two sentences. Indeed, the order that sentences are consecutive is not a separate sentence; it is part of a sentence. In *Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524, the Supreme Court, distinguishing between mandatory minimum and maximum, explained: "Read together, *McMillan* [*v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67] and *Apprendi* mean that those facts setting the outer limits of a sentence, and of the judicial power to impose it, are elements of the crime for the purposes of the constitutional analysis." *Harris* at 567, 122 S.Ct. 2406, 153 L.Ed.2d 524. When the court in the case at bar ordered that the sentences be served consecutively, it set "the outer limits of a sentence." I, therefore, see no justification for excluding the application of *Apprendi*, *Blakely*, and *Booker* to consecutive sentences.

{¶ 115} I agree with Judge Gallagher's dissent in his conclusion that under *Apprendi*, *Blakely*, and *Booker* the Ohio statutes requiring findings for consecutive sentences are unconstitutional. I disagree, however, with the remedy he

presents. Eliminating reasons, as well as findings, as a requirement will leave reviewing courts with no clear explanation of a sentence. Appellate courts will then be given the burden of searching for reasons. Because trial courts are more familiar with the facts of a case, the explanation for a sentence is best begun at that stage.

{¶ 116} This shift from requiring statutory findings and supporting reasons to a test for reasonableness belies the underlying question: whether the imposition of a particular sentence removes from the jury the "assessment of facts" that alter or increase "the prescribed range of penalties to which a criminal defendant is exposed." To add the requirement of "reasonableness" does not resolve this question, although I acknowledge that this is the criterion that the United States Supreme Court adopted for the federal guidelines.

{¶ 117} *Booker* expressly grounds its reasonableness criterion in a section of the pre–2003 text of the U.S.Code—a section that

directed appellate courts to review sentences that reflected an applicable Guidelines range for correctness, but to review other sentences—those that fell "outside the applicable Guideline range" with a view toward determining whether such a sentence *"is unreasonable,* having regard for * * * the factors to be considered in imposing a sentence, as set forth in Chapter 227 of this title; and * * * the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of section 3553(c)." 18 U.S.C § 3742(e)(3)(1994 ed.) (emphasis added).

*Booker,* 543 U.S. at ——, 125 S.Ct. at 765, 160 L.Ed.2d 621.

{¶ 118} The court noted that Section 3553(a), which "sets forth numerous factors that guide sentencing," "remains in effect." *Booker,* 543 U.S. at ——, 125 S.Ct. at 766, 160 L.Ed.2d 621. In part, relying upon the 1994 statute, the court added that "a statute that does not explicitly set forth a standard of review may nonetheless do so implicitly." The court also inferred "appropriate review standards from related statutory language, the structure of the statute, and the 'sound administration of justice.'" Ultimately, the Supreme Court explained its standard of review as consistent with the principles of a prior case: *"Pierce* requires us to judge the appropriateness of our inference based on the statute's language and basic purposes." *Booker,* 543 U.S. at ——, 125 S.Ct. at 766, 160 L.Ed.2d 621, citing *Pierce v. Underwood* (1988), 487 U.S. 552, 558–560, 108 S.Ct. 2541, 101 L.Ed.2d 490.

{¶ 119} The standard by which sentences in Ohio may be reviewed, therefore, must arise fundamentally from Ohio's statutes, not solely from *Booker,* which derived the basis of its review from federal statutes. Ohio's statutes do not articulate a reasonableness standard. Nor was this standard the previous statutory basis for appeal. *Booker,* on the other hand, does provide one way to

view the "sound administration of justice."[18] It is doubtful that adding the nebulous standard of "reasonableness," however, will honor the goal of consistency and proportionality, especially if judges are not required to explain their decisions.

{¶ 120} By forcing a certain intellectual framework on a judge's sentencing decision, Ohio's sentencing system provided a basis for comparison and imposed a certain analytical rigor upon trial judges—often not to their liking, but usually propaedeutic. We should not abandon the fundamental principle in Ohio's sentencing statutes that trial judges explain the basis of their sentences.

{¶ 121} Nor do I find in *Booker* any indication that the federal district courts no longer have to provide a "[s]tatement of reasons for imposing a sentence," as required under Section 3553(c), Title 18, U.S.Code. *Booker* expressly excised Sections 3553(b)(1) and 3742(e); it did not excise Section 3553(c), which reads: "The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence * * *."

{¶ 122} If this court excises the requirement of making findings, it need not also excise the requirement of providing reasons, even though they serve a different end than originally intended. This court may direct the court to provide an explanation consistent with the general purposes, that is, consistency and proportionality, and consistent with statutory factors, that is, the seriousness and recidivism factors of R.C. 2929.12. Indeed, if the general purpose of consistency and proportionality was to be achieved through the statutes regarding mandatory findings, there is no reason that purpose could not be served, and the legislative intent thereby preserved, by excising the requirement for specific findings but still requiring an explanation.

{¶ 123} If the trial court is freed from providing any explanations, I believe the burden will fall on appellate courts to provide the rationale. That was never the intent of the legislature. Nor is it wise to turn a reviewing court into mice scurrying about through a transcript without a clear focus. Thus I would not remove the requirement that the trial court provide an explanation. I therefore additionally dissent for this separate reason.

{¶ 124} I also join Judge Sweeney's dissent from the majority opinion on the maximum-sentence issue.

---

18. The next generation of judges, I fear, will spend considerable time trying to get a hold of the word "reasonableness," as well as what is meant by "fact." Already federal district courts are trying to decide whether the federal guidelines are to be given "great weight," *United States v. Wilson* (D.Utah 2005), 350 F.Supp.2d 910, or not, *United States v. Ranum* (E.D.Wis. 2005) 353 F.Supp.2d 984 ("heavy" weight or the equivalent is not appropriate or necessary).

JAMES J. SWEENEY, Judge, concurring and dissenting.

{¶ 125} I concur with the majority position that *Blakely* does not impact much of S.B. 2, including the imposition of consecutive sentences pursuant to R.C. 2929.14(E)(4) and R.C. 2929.19(B)(2)(c). I do respectfully disagree, however, with the majority's conclusion that none of the findings listed in R.C. 2929.14(C), which are required to impose maximum sentences, implicate the Sixth Amendment as construed in *Blakely* and *Booker*.

{¶ 126} I disagree with the majority as to what constitutes the "statutory maximum"[19] under Ohio law. The majority defines the term solely in reference to the basic sentencing ranges set forth in R.C. 2929.14(A). However, "the individual provisions of the sentencing scheme may not be read alone." *State v. Comer*, 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473, ¶ 10. Therefore, the "statutory maximum," as defined by *Blakely*, must be ascertained with regard to S.B. 2 as a whole and not one isolated provision of it.

{¶ 127} Although R.C. 2929.14(A) sets forth the basic sentencing ranges for felonies, they are expressly limited by other mandatory statutory provisions. For example, in this case, the trial court was not free to impose a maximum sentence unless at least one of four facts existed and was supported by clear and convincing evidence. R.C. 2929.14(C); R.C. 2953.08(G); *State v. Comer*, 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473; *State v. Edmonson* (1999), 86 Ohio St.3d 324, 715 N.E.2d 131.

{¶ 128} A trial judge may impose maximum prison terms upon certain major drug offenders and upon certain repeat violent offenders. R.C. 2929.14(C). Defendants receive notice of these charges which are included as specifications in the indictment and are either admitted by the defendant or decided by a jury. Therefore, these findings do not violate the Sixth Amendment. R.C. 2929.14(D)(2) and (3). The only other instances in which a maximum term may be imposed pursuant to R.C. 2929.14(C) are upon offenders "who committed the worst forms of the offense, [or] upon offenders who pose the greatest likelihood of committing future crimes." These findings, which must be made on the record and supported by clear and convincing evidence, implicate *Blakely* to the extent

---

**19.** *Blakely* held that the "statutory maximum" is the "maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. * * * In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' *Bishop*, supra § 87, at 55, and the judge exceeds his proper authority." Id., 542 U.S. at ——, 124 S.Ct. at 2537, 159 L.Ed.2d 403.

that they are not determined by a jury or admitted by the defendant and are required to enhance a sentence to the maximum allowed under R.C. 2929.14(A).

{¶ 129} The trial court must follow Ohio's sentencing guidelines. *Comer*, supra, 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473. R.C. 2929.14(C) prohibits the imposition of the maximum sentence in the absence of required statutory findings. If a trial court imposes a maximum sentence without making the required findings, the appellate court must remand for resentencing. R.C. 2953.08(G). If a trial court imposes a maximum sentence and that sentence is not supported by clear and convincing evidence, the appellate court must reverse or otherwise modify the sentence. Id.

{¶ 130} In *Blakely*, Washington state law provided a maximum term of ten years for Blakely's Class–B offense but provided a recommended range of 49 to 53 months. Other provisions in Washington's law permitted, but did not require, a trial judge to enhance a sentence beyond the recommended range if he or she determined that certain facts existed. However, if the trial judge wished to enhance the sentence based on a finding, he or she could only do so if that finding was supported by a preponderance of the evidence. The trial judge in *Blakely* increased the sentence upon a finding that Blakely had acted with "deliberate cruelty." The United States Supreme Court held that this postconviction judicial finding violated the Sixth Amendment, regardless of whether the trial court was merely "allowed" (rather than required) to consider the imposition of an "exceptional sentence."

{¶ 131} The majority attempts to distinguish the R.C. 2929.14(C) findings from *Blakely* in two respects: (1) that the "subjective" findings are not amenable to indictment and (2) that the findings are discretionary.

{¶ 132} The majority suggests that the judicial fact-finding at issue in *Blakely* (i.e., whether the offender acted with deliberate cruelty) and *Booker* (amount of controlled substance) could have easily been charged as elements of the offenses because they were "objective" facts. Conversely, the majority considers the findings required by R.C. 2929.14(C) to be "subjective" and consistent with an intent to preserve the discretion that judges historically have had for sentencing purposes. From that, the majority concludes that R.C. 2929.14(C) does not implicate the Sixth Amendment. This misses the point. That a fact is not amenable to indictment does not obviate the Sixth Amendment concern. The Sixth Amendment is implicated when an offender's sentence is enhanced postconviction beyond the "statutory maximum" as a result of a factual determination that is neither determined by a jury nor admitted by the offender.[20] The

---

**20.** The vague phrases "worst form of the offense" and "greatest likelihood of committing future crimes" are explained and supported by the R.C. 2929.12 seriousness and recidivism

holdings in *Blakely* and *Booker* are driven by the prerequisite to make the finding that enhances a sentence beyond the statutory maximum and not by the alleged objective or subjective nature of any such fact.

{¶ 133} It is not disputed that trial judges have traditionally enjoyed discretion in sentencing. For the most part, S.B. 2 provides this very discretion. However, the Ohio legislature clearly limited that discretion in terms of imposing maximum sentences pursuant to R.C. 2929.14(C), 2929.19(B)(2)(c), and 2953.08(G). It is because trial courts *must* make these findings in order to impose the maximum sentence that the Sixth Amendment is implicated. See *Booker*, supra (wherein the United States Supreme Court corrected the Sixth Amendment violations in the United States Code by making the federal sentencing guidelines discretionary rather than mandatory). In other words, if Ohio trial courts could impose a maximum sentence *without making any additional postconviction findings*, there would be no problem.

{¶ 134} The " 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum the judge may impose without any additional findings." *Blakely*, 542 U.S. at ——, 124 S.Ct. at 2537, 159 L.Ed.2d 403. If Ohio trial court judges can impose maximum sentences at their discretion *without any additional findings*, why have we, since the inception of S.B. 2, remanded scores of cases for resentencing when a trial court fails to make the required findings?

{¶ 135} Second, the fact that the trial judge may exercise his or her discretion to not impose a maximum sentence is immaterial to the Sixth Amendment analysis. The focus is on the fact that in order to impose the maximum sentence the trial judge *must* make the findings. In *Blakely*, the United States Supreme Court noted that "[t]his distinction is immaterial. Whether the judge's authority to impose an enhanced sentence depends on finding a specified fact (as in *Apprendi*), one of several specified facts (as in *Ring*), or any aggravating fact (as here), it remains the case that the jury's verdict alone does not authorize the sentence. The judge acquires that authority only upon finding some additional fact." More pointedly, in footnote 8 the Supreme Court expounded: "Nor does it matter that the judge must, after finding aggravating facts, make a judgment that they present a compelling ground for departure. He cannot make that judgment without finding some facts to support it beyond the bare elements of the offense. Whether the judicially determined facts require a sentence enhancement or merely allow it, the verdict alone does not authorize the sentence." *Blakely*, 542 U.S. 296, ——, 124 S.Ct. at 2538, 159 L.Ed.2d 403. In this case, it

factors. This arguably increases the Sixth Amendment concern since an offender in Ohio has even less notice of what R.C. 2929.12 factors the court may rely on to enhance the sentence.

cannot be disputed that the greatest sentence the trial court could have imposed on Lett for each offense *without making any additional findings*, was a term less than the maximum allowed by R.C. 2929.14(A).

{¶ 136} Unless certain statutory provisions are ignored, *Blakely* unavoidably applies to portions of S.B. 2, including the imposition of maximum sentences on those who commit the "worst form of the offense" or "pose the greatest likelihood of committing future crimes." The Ohio Supreme Court has already declared that a jury may not make those determinations and has directed courts to either "(1) apply the statutes as if *Blakely* did not render them unconstitutional and conduct a sentencing hearing without a jury or (2) find the statutes unconstitutional under *Blakely* and refuse to impose those enhancement provisions * * * deem[ed] unconstitutional." *State ex Rel. Mason v. Griffin*, 104 Ohio St.3d 279, 2004-Ohio-6384, 819 N.E.2d 644, at ¶ 17. I would declare the judicial findings of R.C. 2929.14(C), required to enhance an offender's sentence to the maximum term, unconstitutional under the authority of *Blakely* and *Booker*. Being in the minority on this issue, it is unnecessary to elaborate on what the ramifications would be had these provisions been deemed unconstitutional.