MARY J. BOYLE, J., CONCURRING IN PART AND DISSENTING IN PART:
 

 {¶ 21} I respectfully concur in part and dissent in part. I dissent on the first assignment of error, but concur with the remaining opinion. It is my view that Roberts's sentence of almost 19 years in prison is not supported by the record and completely fails to consider the legislative intent of Ohio's comprehensive sentencing statutes.
 

 A. Standard of Review
 

 {¶ 22} Although the Ohio Supreme Court made clear in
 
 State v. Marcum
 
 ,
 
 146 Ohio St.3d 516
 
 ,
 
 2016-Ohio-1002
 
 ,
 
 59 N.E.3d 1231
 
 , that our review of felony sentences is not an abuse of discretion, questions still remain as to what the actual scope of our review should be. I believe that there is a troubling trend occurring throughout appellate courts in this state that will, if not reigned in by the Ohio Supreme Court, essentially eliminate meaningful review of felony sentences. As one appellate judge stated, " 'appellate review of sentencing is under assault.' "
 
 State v. Beverly
 
 ,
 
 2016-Ohio-8078
 
 ,
 
 75 N.E.3d 847
 
 , ¶ 42 (Donovan, J., dissenting), quoting
 
 More Than a Formality: The Case for Meaningful Substantive Reasonable Review
 
 ,
 
 127 Harv.L.Rev. 951
 
 , 951 (2014). I could not agree more with the dissenting judge in
 
 Beverly
 
 that "[t]his assault is unjustified and contrary to legislative intent when we look at the legislative history of S.B. 2 and H.B. 86."
 

 Id.
 

 {¶ 23} While the majority acknowledges that "there may have been an intent under Am.Sub.S.B. No. 2 to create a more expansive appellate review process," it states that any intent by S.B. 2 has essentially been obliterated by case law that has developed "over the years." The majority claims that if the legislature "took issue with the courts' interpretation of R.C. 2953.08," it could have done something about it. It is my view that the legislature has done something about it, and yet, courts continue to eradicate meaningful appellate review of felony sentences. A review of the Ohio's comprehensive sentencing scheme is necessary.
 

 {¶ 24} Before Am.Sub.S.B. No. 2 ("S.B. 2") was enacted in 1996, courts had wide discretion to sentence an offender within the statutory sentencing provisions.
 
 State v. Johnson
 
 ,
 
 40 Ohio St.3d 130
 
 , 133-134,
 
 532 N.E.2d 1295
 
 (1988). Because of that, "sentencing decisions were generally subjected to an abuse of discretion standard, and appellate courts rarely disturbed a sentence imposed within statutory limits."
 
 State v. Shryock
 
 , 1st Dist. Hamilton No. C-961111,
 
 1997 WL 1008672
 
 , 2 (Aug. 1, 1997). A trial court's sentencing discretion, however, was "limited and circumscribed by the parameters imposed by the legislature."
 
 State v. Bowman
 
 , 3d Dist. Hancock No. 5-90-11,
 
 1990 WL 113353
 
 , 2 (Aug. 6, 1990).
 

 {¶ 25} For example, under these limited parameters, appellate courts would find an abuse of discretion and reverse a sentence if the trial court considered improper factors when sentencing a defendant.
 
 See
 

 State v. Smith
 
 , 8th Dist. Cuyahoga No. 50145,
 
 1986 WL 2348
 
 (Feb. 20, 1986) (defendant's sentence reversed because the trial court considered a conviction that had been previously vacated by the court of appeals). Appellate courts would also find that a trial court abused its discretion if the trial court failed to follow a mandatory duty prescribed by the legislature.
 
 See
 

 State v. Ragland
 
 ,
 
 17 Ohio App.3d 221
 
 ,
 
 478 N.E.2d 1014
 
 (2d Dist.1984) (sentence reversed because the trial court failed to follow a statutory sentencing mandate to give the defendant a choice if he wanted to be sentenced to the law in effect at the time of sentencing or at the time he committed the offense). Finally, appellate courts would reverse consecutive sentences if the trial court failed to impose them according to the relevant statute at that time.
 
 See
 

 Hamilton v. Adkins
 
 ,
 
 10 Ohio App.3d 217
 
 ,
 
 461 N.E.2d 319
 
 (12th Dist.1983) (consecutive sentences reversed because trial court did not specify that the sentences be served consecutively, as required by former R.C. 2929.41 );
 
 Bowman
 
 (sentence reversed when the trial court ordered that a sentence for a misdemeanor be served consecutively to a felony in violation of former R.C. 2929.41(A) ).
 

 {¶ 26} S.B. 2 was the first major crime reform bill in Ohio since 1974. Griffin & Katz,
 
 Ohio Felony Sentencing Law
 
 1 (2002) ("Griffin & Katz"). This comprehensive bill changed the definitions of crimes and the sentencing scheme and provided "precise guidance for criminal sentencing within clearly defined constraints."
 
 State v. Comer
 
 ,
 
 99 Ohio St.3d 463
 
 ,
 
 2003-Ohio-4165
 
 ,
 
 793 N.E.2d 473
 
 , ¶ 10, citing Painter,
 
 Appellate Review Under the New Felony Sentencing Guidelines: Where Do We Stand?
 
 , 47 Cleve.St.L.Rev. 533, 537-538 (1999) ( "Painter").
 

 {¶ 27} S.B. 2 was enacted in part as a result of the growing concerns about prison overcrowding. Painter at 537. But also, "there was a notion that offenders received disparate sentences for the same crime in
 different sections of the state."
 

 Id.
 

 , citing Griffin and Katz,
 
 Ohio Felony Sentencing Law
 
 1 (1998). Because of this, the Ohio Criminal Sentencing Commission was created to develop a sentencing policy "designed to enhance public safety by achieving certainty in sentencing, deterrence, and a reasonable use of correctional facilities, programs, services," and to "achieve fairness in sentencing."
 

 Id.
 

 {¶ 28} A "hallmark" of S.B. 2 was appellate review of sentences. Under S.B. 2, "the law accords meaningful review of * * * sentencing decisions by the appellate courts."
 
 Comer
 
 at ¶ 10. Appellate review was "intended to ensure that offenders [were] sentenced consistently." Painter at 538. The legislature enacted R.C. 2953.08 to accomplish consistent sentencing through "meaningful appellate review."
 
 Comer
 
 at ¶ 10 (" 'Meaningful review' means that an appellate court hearing an appeal of a felony sentence may modify or vacate the sentence and remand the matter to the trial court for resentencing if the court clearly and convincingly finds that the record does not support the sentence or that the sentence is otherwise contrary to law."). Indeed, the most significant aspect of the new sentencing law was that trial courts no longer had unfettered discretion when sentencing offenders. Painter at 537-38.
 

 {¶ 29} When the General Assembly first enacted R.C. 2953.08, however, it did not specify, as it does now, that "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion."
 
 See
 
 former R.C. 2953.08. The legislature initially provided little guidance, and because of this, appellate courts initially struggled with the degree of review that they needed to give to sentences. Painter at 540. The debate centered around whether appellate courts should apply a "deferential abuse-of-discretion standard" or "whether the courts should apply a more stringent standard."
 

 Id.
 

 at 540-541
 
 . "[A]t one time or another, appeals courts from every district suggested that there was an abuse-of-discretion standard."
 

 Id.
 

 at 541
 
 .
 

 {¶ 30} The legislature finally "settled" the matter, effective October 10, 2000, when it amended R.C. 2953.08(G)(2) to add: "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." In his article,
 
 Appellate Review Under the New Felony Sentencing Guidelines
 
 , Painter, then a judge at the First Appellate District, explained that this amendment was "a key step to ending the inconsistent treatment that defendants were receiving in appellate districts throughout the state."
 

 Id.
 

 But Painter went on to "predict that appellate courts will continue to take differing approaches to sentencing review." I wonder if Painter now knows how clairvoyant he actually was back in 1999.
 

 {¶ 31} Although S.B. 2 "limited judicial discretion in imposing consecutive sentences [and other provisions not relevant here] and established a presumption in favor of concurrent sentences in former R.C. 2929.41(A)," the Ohio Supreme Court, in 2006, severed the consecutive sentence statute, struck the presumption in favor of concurrent sentences provided in R.C. 2929.41(A), and held that judges no longer had to make findings or give reasons for imposing consecutive sentences.
 
 State v. Foster
 
 ,
 
 109 Ohio St.3d 1
 
 ,
 
 2006-Ohio-856
 
 ,
 
 845 N.E.2d 470
 
 , ¶ 97. It did so after recognizing that requiring trial judges to engage in judicial fact-finding prior to imposing consecutive sentences violated the Sixth Amendment right to trial by jury as construed by the United States Supreme Court in
 
 Apprendi v. New Jersey
 
 ,
 
 530 U.S. 466
 
 ,
 
 120 S.Ct. 2348
 
 ,
 
 147 L.Ed.2d 435
 
 (2000) ;
 

 Ring v. Arizona
 
 ,
 
 536 U.S. 584
 
 ,
 
 122 S.Ct. 2428
 
 ,
 
 153 L.Ed.2d 556
 
 (2002) ; and
 
 Blakely v. Washington
 
 ,
 
 542 U.S. 296
 
 ,
 
 124 S.Ct. 2531
 
 ,
 
 159 L.Ed.2d 403
 
 (2004).
 

 {¶ 32} But the Ohio Supreme Court later held that Ohio's consecutive sentencing statutes under S.B. 2 were not unconstitutional in light of a new United States Supreme Court case.
 
 State v. Hodge
 
 ,
 
 128 Ohio St.3d 1
 
 ,
 
 2010-Ohio-6320
 
 ,
 
 941 N.E.2d 768
 
 , ¶ 19-20, citing
 
 Oregon v. Ice
 
 ,
 
 555 U.S. 160
 
 , 168,
 
 129 S.Ct. 711
 
 ,
 
 172 L.Ed.2d 517
 
 (2009). Less than a year after
 
 Hodge
 
 , the General Assembly enacted Am.Sub.H.B. No. 86 ("H.B. 86"), effective September 30, 2011, "with a legislative purpose to reduce the state's prison population and to save the associated costs of incarceration by diverting certain offenders from prison and by shortening the terms of other offenders sentenced to prison."
 
 State v. Bonnell
 
 ,
 
 140 Ohio St.3d 209
 
 ,
 
 2014-Ohio-3177
 
 ,
 
 16 N.E.3d 659
 
 , ¶ 20, citing Ohio Legislative Service Commission, Fiscal Note & Local Impact Statement to Am.Sub.H.B. 86. This new legislation revived Ohio's statutory presumption in favor of concurrent sentences and further directed courts to make statutorily enumerated findings prior to imposing consecutive sentences.
 
 See
 
 id.
 

 {¶ 33} After H.B. 86 became effective, appellate courts again struggled with what standard of review to apply when reviewing sentences and whether courts should apply an abuse of discretion standard. But as I stated at the outset, the Ohio Supreme Court settled that matter in
 
 Marcum
 
 ,
 
 146 Ohio St.3d 516
 
 ,
 
 2016-Ohio-1002
 
 ,
 
 59 N.E.3d 1231
 
 . In the last couple of years, however, beginning with what appears to be a case from this district (before
 
 Marcum
 
 ),
 
 State v. Venes
 
 ,
 
 2013-Ohio-1891
 
 ,
 
 992 N.E.2d 453
 
 (8th Dist.), courts have begun interpreting R.C. 2953.08 as "an extremely deferential standard of review."
 
 Venes
 
 at ¶ 21. This is highly alarming and somewhat puzzling, considering the history and purpose behind S.B. 2 and H.B. 86.
 

 {¶ 34} There is no question that " 'abuse of discretion' is the most deferential standard of review-next to no review at all."
 
 In re D.T.
 
 ,
 
 212 Ill.2d 347
 
 , 356,
 
 289 Ill.Dec. 11
 
 ,
 
 818 N.E.2d 1214
 
 (2004). The General Assembly and the Ohio Supreme Court have made it abundantly clear that we do not review felony sentences for abuse of discretion. Rather, when reviewing a felony sentence, an appellate court must conduct a "meaningful review" of the trial court's sentencing decision.
 
 Comer
 
 ,
 
 99 Ohio St.3d 463
 
 ,
 
 2003-Ohio-4165
 
 ,
 
 793 N.E.2d 473
 
 , at ¶ 10 ;
 
 State v. Daughenbaugh
 
 , 3d Dist. Wyandot No. 16-07-07,
 
 2007-Ohio-5774
 
 ,
 
 2007 WL 3132380
 
 , ¶ 8, citing
 
 State v. Carter
 
 , 11th Dist. Portage No. 2003-P-0007,
 
 2004-Ohio-1181
 
 ,
 
 2004 WL 473642
 
 .
 

 {¶ 35} "Meaningful review" means that we must review the entire record, including "[a]ny presentence, psychiatric, or other investigative report that was submitted to the court in writing before the sentence was imposed," the trial record, and any oral or written statements made to or by the court at the sentencing hearing. R.C. 2953.08(F)(1)-(3). And after reviewing the entire record, if we clearly and convincingly determine that "the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law," then we have the power to "increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing." R.C. 2953.08(G)(2) ;
 
 Comer
 
 at ¶ 10 ;
 
 Marcum
 
 at ¶ 1.
 

 {¶ 36} In
 
 Venes
 
 ,
 
 2013-Ohio-1891
 
 ,
 
 992 N.E.2d 453
 
 , this court stated at ¶ 20:
 

 It is important to understand that the "clear and convincing" standard applied in R.C. 2953.08(G)(2) is not discretionary.
 

 In fact, R.C. 2953.08(G)(2) makes it clear that "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." As a practical consideration, this means that appellate courts are prohibited from substituting their judgment for that of the trial judge.
 

 {¶ 37} Considering the legislative history and purpose behind S.B. 2 and the enactment of R.C. 2953.08(G)(2), as well as H.B. 86 reviving R.C. 2929.14(C)(4) and 2953.08(G)(2), this court could not have been more wrong in
 
 Venes
 
 . It is the abuse of discretion standard that prohibits appellate courts from substituting their judgment for that of the trial judge-a standard explicitly rejected by the legislature and the Ohio Supreme Court when reviewing felony sentences.
 
 See
 

 Pons v. Ohio State Med. Bd.
 
 ,
 
 66 Ohio St.3d 619
 
 , 621,
 
 614 N.E.2d 748
 
 (1993) ("Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for those of the * * * trial court.");
 
 Marcum
 
 ,
 
 146 Ohio St.3d 516
 
 ,
 
 2016-Ohio-1002
 
 ,
 
 59 N.E.3d 1231
 
 , at ¶ 1.
 

 {¶ 38} In the next paragraph of
 
 Venes
 
 , we then stated at ¶ 21:
 

 It is also important to understand that the clear and convincing standard used by R.C. 2953.08(G)(2) is written in the negative. It does not say that the trial judge must have clear and convincing evidence to support its findings. Instead, it is the court of appeals that must clearly and convincingly find that the record does not support the court's findings. In other words, the restriction is on the appellate court, not the trial judge. This is an extremely deferential standard of review.
 

 {¶ 39} This paragraph further interpreting R.C. 2953.08 is just as baffling and troubling as paragraph 20, if not more so. There is no "restriction" on appellate courts. Saying that, however, does not mean that there is a "restriction" on the trial court. Of course the "restriction" is not on the trial court-it is the standard of review for appellate courts. "Restrictions" on trial courts are set forth in R.C. 2929.11, 2929.12, 2929.14(C)(4) and all of the other sentencing provisions. But the statute is not written in the "negative"-and even if it is (simply because it contains the word "not"), it certainly does not mean what
 
 Venes
 
 (and unfortunately, the many cases following
 
 Venes
 
 on this point
 
 [2]
 
 ) says it means. If an appellate court clearly and convincingly finds that the record does not support the trial court's findings, we may increase, reduce, modify, or otherwise reverse a sentence. That is the same as saying that the record must clearly and convincingly support the trial court's findings. But most importantly, this is
 
 not
 
 an "extremely deferential review."
 

 {¶ 40} In
 
 Marcum
 
 ,
 
 146 Ohio St.3d 516
 
 ,
 
 2016-Ohio-1002
 
 ,
 
 59 N.E.3d 1231
 
 , decided in March 2016, the Ohio Supreme Court, well aware of
 
 Venes
 
 and the many cases following
 
 Venes
 
 on this point, did not place these "restrictions" or limitations on appellate courts as
 
 Venes
 
 claims. Nor did the Supreme Court say anything about R.C. 2953.08 being "extremely deferential."
 
 Marcum
 
 explicitly construed R.C. 2953.08 without those limitations and, thus, it is my view that
 
 Marcum
 
 effectively overruled paragraphs 20 and 21 of
 
 Venes
 
 . In construing
 R.C. 2953.08, the Supreme Court stated in
 
 Marcum
 
 :
 

 In the final analysis, we hold that R.C. 2953.08(G)(2)(a) compels appellate courts to modify or vacate sentences if they find by clear and convincing evidence that the record does not support any relevant findings under "division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code."
 
 See
 

 State v. Belew
 
 ,
 
 140 Ohio St.3d 221
 
 ,
 
 2014-Ohio-2964
 
 ,
 
 17 N.E.3d 515
 
 , ¶ 12 (Lanzinger, J., dissenting from the decision to dismiss the appeal as having been improvidently accepted) (" R.C. 2953.08(G)(2) repudiates the abuse-of-discretion standard in favor of appellate review that upholds a sentence unless the court of appeals clearly and convincingly finds that the record does not support the trial court's findings").
 

 Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.
 

 Cross v. Ledford
 
 ,
 
 161 Ohio St. 469
 
 ,
 
 120 N.E.2d 118
 
 (1954), paragraph three of the syllabus.
 

 We note that some sentences do not require the findings that R.C. 2953.08(G) specifically addresses. Nevertheless, it is fully consistent for appellate courts to review those sentences that are imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12 under a standard that is equally deferential to the sentencing court. That is, an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence.
 

 Marcum
 
 at ¶ 22-23.
 

 {¶ 41} There is nothing in the Supreme Court's interpretation of R.C. 2953.08(G)(2) to indicate that this is "an extremely deferential review." Clear and convincing does not rise to the level of "beyond a reasonable doubt." Maybe if appellate courts had to find that the record does not support the trial court's findings "beyond a reasonable doubt," I could agree that we could call it "extremely deferential." But we do not. Under R.C. 2953.08, appellate courts may not modify or reverse a sentence at their whim or fancy. And there is no question that trial courts have wide discretion to fashion a sentence within the statutory framework. That does not mean, however, that appellate courts should not fulfill their duty to actively review a record to determine if it supports the trial court's sentence-to provide
 
 meaningful
 
 appellate review of a felony sentence.
 

 {¶ 42} Painter concluded his article,
 
 Appellate Review Under the New Felony Sentencing Guidelines
 
 , by asking "what's next?" He stated:
 

 With the recent amendment to the sentencing guidelines that an "appellate court's standard for review is not whether the sentencing court abused its discretion," the debate is over regarding whether abuse of discretion remains the standard of review. The legislature has clearly indicated that appeals courts must actively review sentences, not merely defer to the determinations of trial judges. Because a primary purpose of Senate Bill 2 is to eliminate disparate sentencing for similar offenses, it seems only logical that appellate courts must take a more active role in reviewing sentences than that allowed under the
 deferential abuse-of-discretion standard. A more active review process is the only effective way to ensure that trial judges are properly and consistently applying the guidelines. Otherwise, Senate Bill 2, which was intended to overhaul felony sentencing with appellate courts playing an active role in ensuring consistency, would be meaningless.
 

 But the debate is not necessarily over. Although it is clear that abuse-of-discretion is no longer the standard of review, an issue still remains regarding how intense the standard of review should be-will it be on the deferential end of the continuum, or will it be on the other end, such as a de novo review?
 

 Id.
 
 at 545-546.
 

 {¶ 43} Since Painter wrote his article-nearly 20 years ago-the pendulum has swung considerably on the "deferential end of the continuum," so much so that it is effectively back to pre-S.B. 2 levels. As one court expressed in reversing a defendant's 20-year aggregate sentence because the record did not clearly and convincingly support the trial court's consecutive sentence findings and did not demonstrate that it was the minimum sanction to accomplish the purposes of sentencing without imposing an unnecessary burden on the state:
 

 "Formalism" has been described as scrupulous or excessive adherence to outward form at the expense of inner reality or content. We are concerned that our sentencing jurisprudence has become a rubber stamp for rhetorical formalism. It appears that consecutive sentences will be upheld on appellate review as long as the aggregate sentence is within the arithmetic long-addition established by the statutes and the trial judge and the entry state that this calculation is (1) necessary to protect the public from future crime or to punish the offender, (2) not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) one or more of the offenses was committed while awaiting trial or sentencing.
 

 State v. Adams
 
 , 2d Dist. Clark No. 2014-CA-13,
 
 2015-Ohio-1160
 
 ,
 
 2015 WL 1402904
 
 , ¶ 30.
 

 {¶ 44} The "hallmark" of S.B. 2 was sentencing reform that involved a system of "legislative guidance coupled with
 
 strong
 
 appellate review" to "achieve consistency in sentencing, control costs, and incorporate new knowledge about human behavior and sentencing alternatives in a manner that is less political and more open to an objective balancing of societal needs." (Emphasis added.) Griffin and Katz,
 
 Sentencing Consistency: Basic Principles Instead of Numerical Grids: The Ohio Plan
 
 ,
 
 53 Case W.Res.L.Rev. 1
 
 , 2 (2002) ("Ohio Plan"). Indeed, "[t]he capstone of the Ohio Plan [was] appellate review."
 

 Id.
 

 at 3
 
 .
 

 {¶ 45} Again, when the General Assembly enacted H.B. 86, reviving R.C. 2929.14(C)(4) and 2953.08(G)(2), the purpose, in part, was "to reduce the state's prison population and to save the associated costs of incarceration by diverting certain offenders from prison and by shortening the terms of other offenders sentenced to prison."
 
 Bonnell
 
 ,
 
 140 Ohio St.3d 209
 
 ,
 
 2014-Ohio-3177
 
 ,
 
 16 N.E.3d 659
 
 , at ¶ 20 ;
 
 see also
 

 State v. Limoli
 
 ,
 
 140 Ohio St.3d 188
 
 ,
 
 2014-Ohio-3072
 
 ,
 
 16 N.E.3d 641
 
 , ¶ 10 ;
 
 State v. Taylor
 
 ,
 
 138 Ohio St.3d 194
 
 ,
 
 2014-Ohio-460
 
 ,
 
 5 N.E.3d 612
 
 , ¶ 17. This is because, as of February 22, 2011, Ohio prisons held 50,461 inmates-31 percent over capacity or 12,500 more inmates than our prisons were expected to hold. David J. Diroll,
 
 Prison Crowding: The Long View, With Suggestions,
 
 4 (Mar. 2011).
 

 {¶ 46} With this context in mind, R.C. 2929.11(A) now states:
 

 A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender
 
 using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources
 
 . To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.
 

 (Emphasis added.)
 

 {¶ 47} In H.B. 86, the General Assembly added the language, "using the
 
 minimum sanctions
 
 that the court determines accomplish those purposes without imposing an
 
 unnecessary burden
 
 on state or local government resources" to the original language of R.C. 2929.11(A). (Emphasis added.) Regarding former R.C. 2929.11(A), Griffin and Katz had explained that it "operate[d] to impose real control over judicial decision-making." Ohio Plan at 6. Thus, R.C. 2929.11(A), as amended by H.B. 86, arguably imposes
 
 even more
 
 control over judicial decision-making than it did under S.B. 2.
 

 {¶ 48} And under R.C. 2929.11(B), a felony sentence "shall be reasonably calculated to achieve the two overriding purposes of felony sentencing" and be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." With respect to this provision under S.B. 2, Griffin and Katz explained:
 

 The effect under the new law of establishing "public protection" and "punishment" as overriding purposes of sentencing but not limiting them to "considerations" is that every sentence must now be assessed by whether, as set forth in R.C. 2929.11(B), it is "reasonably calculated to achieve" those overriding purposes. Failure of a sentence to do so causes it to be appealable on the ground that the sentence is "contrary to law."
 

 Ohio Plan at 6.
 

 {¶ 49} Under
 
 Marcum
 
 ,
 
 146 Ohio St.3d 516
 
 ,
 
 2016-Ohio-1002
 
 ,
 
 59 N.E.3d 1231
 
 , appellate courts are "compelled" to "modify or vacate sentences if they find by clear and convincing evidence that the record does not support any relevant findings under" R.C. 2929.14(C)(4) (and other findings not relevant to this appeal) or are otherwise contrary to law.
 

 Id.
 

 at ¶ 22 ; R.C. 2953.08(G)(2). A sentence is contrary to law if the trial court fails to impose a sentence that is proportionate and fair and does not overburden state prisons or state and local budgets. Thus, in reviewing a sentence, we must perform our duty to determine if the trial court has complied with the applicable statutes and imposed a sentence that is "reasonably calculated to achieve" the overriding purposes of felony sentencing" and is "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim." R.C. 2929.11(B). We must also ensure that the sentence is "consistent with sentences imposed for similar crimes committed by similar offenders."
 

 Id.
 

 And we must make certain that the trial court, in exercising its discretion, imposed a sentence that achieves the overriding purposes of felony sentencing-protecting the public and punishing the offender-"using the minimum sanctions that the court determines accomplish those purposes without
 imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A).
 

 B. Consecutive Sentences under R.C. 2929.14(C)(4)
 

 {¶ 50} The majority asserts that "[t]he purpose of R.C. 2929.14(C)(4) is to prevent this type of career criminal [discussing Roberts] from perpetuating a cycle of criminality upon the public." While I agree the majority's stated purpose for imposing consecutive sentences is at least one reason to do so, I disagree that is the purpose behind R.C. 2929.14(C)(4). If that were the case, there would not be a presumption for concurrent sentences in Ohio, nor would there be any reason to require the trial court to make findings before imposing consecutive sentences. We could simply go back to pre-S.B. 2 days-when trial courts were free to sentence an offender to consecutive sentences by simply stating so. A brief review of the history of consecutive sentences is instructive.
 

 {¶ 51} The presumption under R.C. 2929.41(A) -that prison sentences for multiple offenses be served concurrently-was not always the case. Indeed, it was the exact opposite.
 
 See
 

 State v. Lett
 
 ,
 
 161 Ohio App.3d 274
 
 ,
 
 2005-Ohio-2665
 
 ,
 
 829 N.E.2d 1281
 
 (8th Dist.), quoting
 
 King v. Maxwell
 
 ,
 
 173 Ohio St. 536
 
 , 538,
 
 184 N.E.2d 380
 
 (1962) (" 'Concurrent sentences, however, require a positive act by the trial court, and in the absence of a declaration thereof by the trial court, it is presumed such sentences will run consecutively.' ");
 
 see also
 

 Stewart v. Maxwell
 
 ,
 
 174 Ohio St. 180
 
 , 181,
 
 187 N.E.2d 888
 
 (1963) (characterizing the imposition of concurrent sentences as a "reward" because it meant that the offender had been relieved of "paying a part of the penalty for his crimes").
 

 {¶ 52} As we explained in
 
 Lett
 
 , the General Assembly "ended the long-standing presumption that sentences for multiple convictions be served consecutively" in 1974 when it adopted the "approach taken by the American Law Institute's Model Penal Code" in enacting former R.C. 2929.41(A), which was in effect until S.B. 2.
 
 [3]
 
 This provision stated then, as it does now, that aside from an exception set forth in the subsection (B), "a sentence of imprisonment shall be served concurrently with any other sentence of imprisonment."
 
 Lett
 
 at ¶ 35, citing former R.C. 2929.41(A). We referred to this "change in presumption from consecutive sentences to concurrent sentences" as a "sea change in the law."
 
 Id.
 
 at ¶ 39. Despite this "sea change in the law," however, R.C. 2929.41(A) only required that a trial court state that it was imposing consecutive sentences to make it so.
 

 {¶ 53} In
 
 Lett
 
 , we surmised that the change in presumption in 1974 occurred for several reasons: "a backlash against prosecutorial overindictment, disparity in the manner in which consecutive sentences were imposed, frustration with the virtually unreviewable nature of consecutive sentencing, and economic considerations relating to the long-term housing of prisoners."
 
 Id.
 
 Unfortunately, these reasons sound all too familiar. Because despite the changes made in 1974, as well as S.B. 2 over 20 years later and most recently H.B. 86, we,
 as a state, still grapple with these same issues today. Part of the reason that we still do is because trial courts continue to impose harsh sentences far too often for nonviolent crimes, and appellate courts continue to refuse to perform their duty to provide meaningful appellate review.
 

 {¶ 54} After review of the sentence imposed in this case, I agree with Roberts that consecutive sentences are disproportionate to the
 
 seriousness
 
 of his conduct and the danger he poses to the public. This is especially so in light of the principles and purposes of felony sentencing set forth in R.C. 2929.11, which states that a sentencing court "shall be guided by the overriding purposes of felony sentencing"-to protect the public and punish the offender-using "the
 
 minimum sanctions
 
 that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). Additionally, a sentence must be "reasonably calculated to achieve the two overriding purposes of felony sentencing" and be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim[.]" R.C. 2929.11(B). I agree with Roberts that the sentence imposed by the trial court does not meet any of these requirements.
 

 {¶ 55} The trial court sentenced Roberts to nearly 19 years in prison-for stealing a bottle of Pepsi and pushing a store security guard, stealing $250 of fishing equipment from someone's garage, failing to report for supervision, and breaking and entering (or attempting to enter) the homes of three victims and stealing less than $2,000 worth of property. These were not violent crimes. No one was hurt. Yet, Roberts received 18 years and 11 months in prison. Without minimizing the emotional distress the burglary offenses undoubtedly caused the victims, Roberts's offenses do not reflect such seriousness and danger to the public that almost 19 years in prison is necessary to protect the public from him.
 

 {¶ 56} Indeed, such a lengthy sentence may demean the seriousness of other crimes and the harm to other victims. For example, an offender who murders someone could get out of prison in less time; the sentence for murder is 15 years to life. R.C. 2929.02(B)(1). Rape has a maximum sentence of 11 years in prison. R.C. 2907.02(B). Offenders who repeatedly beat their significant others or spouses do not get that much time-even when the offender has multiple domestic violence convictions.
 
 See
 

 State v. Russell
 
 , 12th Dist. Butler No. CA2012-03-066,
 
 2013-Ohio-1381
 
 ,
 
 2013 WL 1438000
 
 (defendant who was convicted of abduction and domestic violence for beating his girlfriend was sentenced to 36 months in prison; it was his third domestic violence conviction). Those are serious crimes of violence.
 

 {¶ 57} At the time of these offenses here, Roberts was approximately 50 years old. According to his presentence investigation report, he was found to be barely functioning within a borderline intellectual level. He was also addicted to heroin and a lesser form of heroin. Consecutive sentences are reserved for the worst offenses and offenders.
 
 State v. Ladson
 
 , 8th Dist. Cuyahoga No. 83209,
 
 2004-Ohio-2973
 
 ,
 
 2004 WL 1277176
 
 , ¶ 23, citing
 
 State v. Boland
 
 ,
 
 147 Ohio App.3d 151
 
 , 162,
 
 2002-Ohio-1163
 
 ,
 
 768 N.E.2d 1250
 
 (7th Dist.). There is simply nothing in the record before us to indicate that Roberts's crimes were so great or unusual that no single prison term would adequately reflect the seriousness of his conduct.
 

 {¶ 58} The majority compares the facts of this case to the facts in
 
 State v. Aniton
 
 , 8th Dist. Cuyahoga No. 102440,
 
 2015-Ohio-4080
 
 ,
 
 2015 WL 5781059
 
 , where this court
 upheld a 21-year sentence for multiple crimes. But in
 
 Aniton
 
 , one of the defendant's convictions was unlawful sexual conduct with a minor, and in another, he committed some of the burglary offenses with a firearm. Plus, unlike Roberts, the defendant's prior criminal history in
 
 Aniton
 
 included an offense of violence.
 

 {¶ 59} In summary, although the court made the findings necessary to order Roberts to serve his sentences consecutively, I would clearly and convincingly find that the record does not support the trial court's finding that consecutive sentences-totaling nearly 19 years in prison-are necessary to protect the public or punish Roberts and are not disproportionate to the seriousness of Roberts's conduct and to the danger he poses to the public. While I certainly understand the trial court's frustration with Roberts, the record does not demonstrate that an 18-year and 11-month prison sentence was "reasonably calculated to achieve" the purposes of felony sentencing using the minimum sanctions without imposing an unnecessary burden on the state.
 

 C. Sentence Modification
 

 {¶ 60} In this case, the trial court sentenced Roberts to six months for escape in Cuyahoga C.P. No. CR-14-584010-A. The court sentenced Roberts to seven years on each of the two burglary counts in Cuyahoga C.P. No. CR-14-586073-A, to be served concurrent to each other. And in Cuyahoga C.P. No. CR-14-584791-A, the court sentenced Roberts to seven years for burglary. With the exception of the six-month sentence for escape and the concurrent terms on the two burglary charges in Cuyahoga C.P. No. CR-14-586073-A, the trial court ordered that all the other prison terms, including the sentences in Cuyahoga C.P. Nos. CR-12-561797-A and CR-13-578409-A, be served consecutively, which amounted to a total sentence of 18 years and 11 months in prison. I would sustain Roberts's first assignment of error, vacate the consecutive portion of his sentence, and modify the sentence to concurrent terms, for an aggregate sentence of seven years in prison.
 

 See
 

 State v. Thompson
 
 , 9th Dist. Wayne No. 15AP0016,
 
 2016-Ohio-4689
 
 ,
 
 2016 WL 3570469
 
 , ¶ 45 ;
 
 State v. Brandon
 
 , 2d Dist. Clark Nos. 2014-CA-143, 2014-CA-144, and 2014-CA-145,
 
 2016-Ohio-227
 
 ,
 
 2016 WL 362936
 
 , ¶ 12 ;
 
 State v. Mason
 
 , 12th Dist. Butler No. CA2014-10-217,
 
 2015-Ohio-1931
 
 ,
 
 2015 WL 2452051
 
 , ¶ 8 ;
 
 State v. Bass
 
 , 4th Dist. Washington No. 16CA32,
 
 2017-Ohio-7059
 
 ,
 
 2017 WL 3279371
 
 , ¶ 6 ; and
 
 State v. St. John
 
 , 11th Dist. Lake No. 2015-L-133,
 
 2017-Ohio-4043
 
 ,
 
 2017 WL 2335366
 
 , ¶ 32.
 

 Former R.C. 2929.41 stated:
 

 (A) Except as provided in division (B) of this section, a sentence of imprisonment shall be served concurrently with any other sentence of imprisonment. In any case, a sentence of imprisonment for misdemeanor shall be served concurrently with a sentence of imprisonment for felony served in a state penal or reformatory institution.
 

 (B) A sentence of imprisonment shall be served consecutively to any other sentence of imprisonment, in the following cases:
 

 (1) When the trial court specifies that it is to be served consecutively.